[Civ. No. 44361. Second Dist., Div. Two. Mar. 19, 1975.]

E. H. BOOKASTA, Plaintiff and Appellant, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Defendant and Respondent.

238

COUNSEL

Fierstein, Sturman & Schulman and Harvey Fierstein for Plaintiff and Appellant.

McCormick & Williams and Harold Rubins for Defendant and Respondent.

OPINION

COMPTON, J.—Does the holding of *Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], that Code of Civil Procedure section 537.1 (prejudgment attachment) is unconstitutional, render an undertaking filed in support of a prejudgment attachment prior to that decision void and thus unavailable to satisfy a debtor who was damaged by such attachment?

The question appears to have been, as yet, unanswered by any appellate court in this state. The trial court here answered the question in the affirmative. We disagree.

In July of 1966, one Engelman brought suit against E. H. Bookasta, plaintiff herein, for damages exceeding $100,000 on an alleged guarantee of a promissory note. After filing his action Engelman procured an ex parte issuance of a writ of attachment pursuant to the provisions of Code of Civil Procedure section 537.1. Defendant Hartford Accident and Indemnity Company (Hartford) issued its undertaking on attachment as required by Code of Civil Procedure section 539. Substantial assets of Bookasta were seized and attached.

Bookasta moved to discharge the writ of attachment and release the levy. That motion was denied and the order of denial was affirmed by the Court of Appeal in *Engelman* v. *Bookasta,* 264 Cal.App.2d 915 [71 Cal.Rptr. 120]. Bookasta eventually prevailed in that action and recovered judgment against Engelman, which judgment became final in 1971. In June of 1971, Bookasta commenced this action against defendant Hartford on its undertaking alleging damages of $55,000 as a result of the attachment. The *Randone* decision was filed September 23, 1971.

The trial court after bifurcating the proceeding and first trying this single issue rendered judgment for Hartford, concluding that the decision in *Randone* caused the undertaking to be void.

The undertaking was a contract to indemnify Bookasta, if he recovered judgment, for damages sustained as a result of the attachment and "if . . . the attachment is discharged on the ground that [Engelman] was not entitled thereto under Sections 537 to 537.2, inclusive . . . [to] pay all damages . . . sustained by reason of . . . the attachment . . . ." (Code Civ. Proc., § 539.)

Thus, going in, Hartford was faced with the possibility of responding in damages if Bookasta obtained a judgment in his favor, or if Engelman were found not to be entitled to the writ of attachment.

Bookasta did obtain judgment and the Supreme Court in *Randone* in effect said that Engelman was never entitled to the attachment in the first place. The fact that the decision in *Randone* was a declaration that the entire procedure was unconstitutional rather than a narrow holding that Engelman was not entitled to an attachment does not mitigate or eradicate the damage already suffered by Bookasta, damages for which Hartford contracted to stand good.

Hartford's major reliance is on *Shaughnessy* v. *American Sur. Co.,* 138 Cal. 543 [69 P. 250, 71 P. 701]. At the time of *Shaughnessy,* Code of Civil Procedure section 1203 required building contractors to post a bond for the protection of materialmen on a private construction job. In *Shaughnessy* the contractor posted a bond issued by the defendant American Surety Company. The contractor then defaulted and the materialmen sued on the bond. The Supreme Court held that the basic statute requiring the bond was unconstitutional and because the bond requirement was unconstitutional the bond was void and there could be no liability imposed on the bonding company.

In *Stowe* v. *Matson,* 94 Cal.App.2d 678 [211 P.2d 591], the plaintiff had obtained an attachment in a previous action. Sureties for the defendant had posted an undertaking to secure release of the attachment. Plaintiff prevailed in the trial and was unable to satisfy his judgment. He then instituted an action against the sureties on the release of attachment bond. There the sureties successfully asserted that the original attachment was void *ab initio* because the cause of action was not one covered by the attachment statute, and since the attachment was void the bond issued to release the attachment was also void. The Court of Appeal affirmed stating at page 683: "Where the attachment is void for lack of jurisdiction or statutory authority, the defendant's undertaking given to release the same is likewise void for lack of consideration. When the attachment is absolutely void the sureties on the bond to release it are not estopped from denying their liability thereon in a subsequent suit on the undertaking."

Thus it is a well settled and general principle of law that a bond given to comply with a statute is not binding if the statute is void. (*Roystone Co.* v. *Darling,* 171 Cal. 526 [154 P. 15]; *Assurance Corp.* v. *Industrial Acc. Com.,* 187 Cal. 615 [203 P. 95]; *Taylor* v. *Exnicious,* 197 Cal. 443 [241 P. 397]; *Loop Lumber Co.* v. *Van Loben Sels,* 173 Cal. 228 [159 P. 600].) The reason is a lack of consideration.

This concept is best stated in 8 California Jurisprudence, Second Edition, Revised, page 692: "[A] bond given to secure a statutory privilege is void as a statutory bond and cannot be upheld as a common-law bond where the statute is unconstitutional, either because the privilege is a constitutional right which cannot be impaired by statute, or because the privilege to be secured by the bond exists apart from the statute."

In *Shaughnessy* the statute requiring the bond was itself an unconstitutional impairment of contract and in *Matson* the privilege of being free of an invalid attachment existed apart from the statutory scheme for release. Thus neither case is controlling here.

■ The holding in *Randone* was not based on any impairment of the attaching creditor's constitutional right or any privilege of his which existed apart from the invalidated statute. The infirmity of Code of Civil Procedure section 537.1 was its denial of due process to the debtor, or persons in the position of Bookasta here.

*Mason* v. *U. S. Fid. & Guar. Co.,* 60 Cal.App.2d 587 [141 P.2d 475], is in point. U. S. Fidelity posted its bond in support of an ex parte temporary restraining order obtained by one Knowles under Code of Civil Procedure section 527. In an action on the bond where the damages included attorneys fees expended in securing the dissolution, U. S. Fidelity argued that the restraining order was void and in excess of the court's jurisdiction and therefore it was not obligated under the bond. The argument was that the plaintiff, the person restrained by the order, should have simply ignored the void restraining order rather than take legal steps to cause its dissolution. In rejecting that argument the court at pages 590-591 stated: "This is a strange argument to be advanced by a defendant who, by issuing the bond, made the issuance of the allegedly void restraining order possible. . . . Had Knowles personally put up the undertaking here involved and were he now being sued on such undertaking, the law is clear that he, having secured the order, would be estopped to challenge its validity. [Citations.] There is no sound reason why a similar rule should not apply against a corporate bondsman. . . ."

In the case at bar Bookasta's position is stronger in that he had no option of refusing to comply. He pursued all of his legal remedies save that of posting a bond for release of the attachment, an option he was not obligated to take.

Hartford's position is premised on the oft-stated rule that a statute declared unconstitutional is null and void as of the date of its enactment and "it is not a law; it confers no rights; it imposes no duties . . . it is . . . as inoperative as though it had never been passed." (*Norton* v. *Shelby County,* 118 U.S. 425, 442 [30 L.Ed. 178, 186, 6 S.Ct. 1121]; also see 16 C.J.S., Constitutional Law, p. 470, § 101.)

This rule, however, has been greatly modified and it is now quite clear

that a statute is merely voidable until such time as it is determined to be unconstitutional and that "The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored." (*Chicot County Dist.* v. *Bank,* 308 U.S. 371, 374 [84 L.Ed. 329, 332-333, 60 S.Ct. 317]; also see 18 C.J.S.; pp. 472-473; *Warring* v. *Colpoys,* 122 F.2d 642 [74 App.D.C. 303, 136 A.L.R. 1025]; *Jawish* v. *Morlet* (D.C.Mun. App.) 86 A.2d 96.)

We cannot justly ignore the fact that, pursuant to what at the time was a recognized and accepted procedure of long standing, Engelman, with the assistance of Hartford's bond, was able to secure the benefit of the seizure of Bookasta's assets to insure the collectibility of any judgment which he might obtain. Without question if Engelman had personally put up the undertaking he could not now deny its validity. According to *Matson; supra,* neither can Hartford.

The ultimate result of Engelman's lawsuit was a determination that it lacked merit. This is the eventuality against which Hartford contracted to indemnify Bookasta. It is of no solace to Bookasta, and thus no exoneration of Hartford that the Supreme Court subsequently declared the attachment to be wrongful for additional reasons.

The judgment is reversed.

Fleming, Acting P. J., and Beach, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1975.