[No. AO21073. First Dist., Div. Two. July 29, 1983.]

MAX FIRST et al., as Trustees, etc., Plaintiffs and Respondents, v. EDWARD ARMES et al., Defendants and Appellants.

COUNSEL

Jeffrey T. Wilbur and Van Hoesen & Rowen for Defendants and Appellants.

Roger Jon Diamond, Ronald S. Greenfield, Lawrence J. Kaplan and Hecht, Diamond & Greenfield for Plaintiffs and Respondents.

OPINION

**KLINE, P. J.**—Surety Insurance Company of California (Surety) appeals from a judgment which awarded the plaintiffs, Max and Thelma First, Trustees for Carol First, M.D., Inc. Pension Trust, the full amount of a $55,000 undertaking issued by Surety. The undertaking was issued as substitution for defendant Edwards Armes' (Armes) property which was subject to a writ of attachment. Surety contends that the judgment should have been limited to $30,650.86. We conclude that the trial court's award of $55,000 was proper and accordingly affirm the judgment.

On October 21, 1980, plaintiffs filed their complaint charging breach of a promissory note, breach of fiduciary duty and fraud by Armes.[1] On November 10, 1980, plaintiffs obtained an ex parte writ of attachment to secure the sum of $55,000. The right to attach order and order for issuance of the writ provided for the writ to issue against four described parcels of real property located in Santa Clara County and money in three Wells Fargo Bank checking accounts in the name of Armes.[2] A return on garnishment thereafter filed by the sheriff certified that $30,650.86 was being held in the bank accounts pursuant to the writ.

On April 23, 1981, Armes filed an ex parte application for an order substituting an undertaking for property and discharging the attachment and releasing the property levied upon, requesting that he be permitted to substitute Surety's undertaking in the amount of $55,000 in lieu of "all of the defendant's property which has been attached or is subject to attachment."[3] The application was granted and the ex parte order entered on that date.

---

[1]Claims not relevant to this appeal were also asserted against several additional defendants.

[2]The real property consisted of one improved parcel and one unimproved parcel standing in the name of Armes alone, and two improved parcels standing in the names of Armes and his wife.

[3]The quoted language is from that portion of the printed application form marked by Armes where the other choice, not marked by Armes, was "the following portion of defendant's property which has been attached or is subject to attachment" with space to insert the value and description of such property.

Subsequently, a stipulated judgment for a sum in excess of $55,000 was entered against Armes and the other defendants, jointly and severally. Plaintiffs thereafter moved, pursuant to Code of Civil Procedure section 1058a,[4] for an order to enforce the liability of Surety on the undertaking.[5] The trial court on November 24, 1982, rendered judgment in favor of plaintiffs and against Surety in the sum of $55,000, and Surety's timely appeal followed.

■ Surety contends that its liability on the undertaking is limited to the value of the funds in the attached bank accounts ($30,650.86) because, although in the face amount of $55,000, the undertaking was filed to obtain release of only the funds in the checking accounts. Plaintiffs, on the other hand, argue that Surety is estopped to deny its liability for the full amount of the undertaking and that, in any event, the trial court's ruling that the undertaking was filed to obtain the release of the checking accounts *as well as* real property whose value together with that of the checking accounts totalled at least $55,000 was proper. We agree with plaintiffs' contentions.

Code of Civil Procedure section 489.310, subdivision (a), provides that a defendant may apply to the court by noticed motion for an order permitting him to substitute an undertaking for any of his property which has been or is subject to being attached. Defendant Armes in this case, however, obtained his order ex parte in contravention of the notice requirement of the statute. Plaintiffs' counsel first learned of the application and order, dated April 23, 1981, upon receipt of a conformed copy after the order had been signed.[6] Counsel was satisfied with the undertaking, as it was in the full amount secured by the writ of attachment, and understandably made no effort to reopen the proceeding or object in any way thereto. Over a year later, as discussions regarding a mandatory settlement conference were taking place among counsel, plaintiffs' attorney learned for the first time that Surety would contend that its liability on the undertaking was limited to the $30,650.86 value of the checking accounts rather than the full $55,000 amount of the undertaking.

There are some inconsistencies in both the ex parte application and the release of attachment order. The application in paragraph 2.b(1) sought the substitution of a $55,000 undertaking in lieu of "all of defendant's property

---

[4]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

[5]Although the Legislature repealed section 1058a in 1982, it remained in effect for bonds and/or undertakings posted prior to January 1, 1983. (Code Civ. Proc., § 995.020, subd. (b).) It provided, in relevant part, that the liability of a surety could be enforced on motion filed in the trial court without the necessity of an independent action.

[6]Although the application and order were dated April 23, 1981, the undertaking of Surety was dated, and apparently filed, April 16, 1981.

which has been or is subject to attachment," but in paragraph 3 described defendant's title to the property by listing only the three Wells Fargo Bank accounts. In the order, the findings under paragraph 2.f(1) stated that the $55,000 undertaking was a sufficient substitution for the property attached, described as the three bank accounts; then paragraph 3.c(1) contained an order that the property levied on pursuant to the writ of attachment dated November 10, 1980, was "released as follows: all property." The next paragraph of the order, 3.d, provided "Defendant may substitute an undertaking for property which has been attached as follows: (1) Amount of undertaking: $55,000.00 (2) Property (Describe): _____." The space for a description of the property was left blank.

Surety asserts that the value of Armes' real property which was subject to attachment could not be included under the release of attachment order because there was not a levy upon any of that property, and the order released only property levied upon. The ambiguities and irregularities in the documents giving rise to the release of attachment through the substitution of a $55,000 undertaking were clearly caused by Surety's principal, Armes, whose counsel prepared the papers and chose to proceed ex parte despite the statutory requirement of a noticed motion. Furthermore, section 489.310, subdivision (c), provides "The defendant shall file an undertaking to pay the plaintiff the value of the property released not exceeding the amount of any judgment which may be recovered by the plaintiff in the action against the defendant. The amount of the undertaking filed pursuant to this section *shall be equal to the lesser of* (1) the value of the property attached or prevented from being attached or (2) the amount specified by the writ to be secured by the attachment. The court shall issue such order upon the condition that a sufficient undertaking be filed." (Italics added.) Since Armes sought by an application of which plaintiffs were given no notice to release "all of defendant's property which has been attached or is subject to attachment" through the substitution of a $55,000 undertaking, rather than a $30,650.86 undertaking, and obtained an order pursuant to such application, it was entirely reasonable for plaintiffs to assume that they were secured to the full extent of the $55,000 specified by the writ of attachment and to rely upon the undertaking accordingly.[7]

---

[7]Code of Civil Procedure section 489.060, subdivision (c), provides "Nothing in [Chapter 9, 'Undertakings'] shall be construed to preclude approval of an undertaking in an amount larger than that required." Although the declaration of Armes' counsel in support of his application for release of attachment stated that the bond in the sum of $55,000 exceeded the amount attached under the writ, Surety has not argued, and the record contains no indication, that an excess undertaking was specifically approved. In view of the specification of the amount of the undertaking to be filed contained in section 489.310, subdivision (c), and the irregularities in the application and order set forth above, such a contention would not be persuasive.

Under the foregoing facts and circumstances, Armes would be estopped to claim that $55,000 was not the value of the property released by the court's order of April 23, 1981, which was issued upon the furnishing of the $55,000 undertaking. His surety, appellant herein, is likewise estopped. (See *Mason* v. *U.S. Fid. & Guar. Co.* (1943) 60 Cal.App.2d 587, 591 [141 P.2d 475] [had surety's principal personally put up the undertaking to secure a temporary restraining order, he would be estopped to assert irregularities in the order; surety was also estopped]; see also *Bookasta* v. *Hartford Acc. & Indem. Co.* (1975) 46 Cal.App.3d 237, 242 [120 Cal.Rptr. 229] [had surety's principal personally put up undertaking to obtain writ of attachment, he could not later deny validity of undertaking; neither could surety].)

In *Mason* v. *U.S. Fid. & Guar. Co., supra,* 60 Cal.App.2d at pages 591-592, the evidence showed that the surety issued its bond before the papers that were to be submitted to the judge were even prepared. The court noted that if the surety's counsel had examined the moving papers before the undertaking was issued, the error in the order it was issued to obtain might never have occurred; since the surety elected to issue the bond without such examination it could not later contend that the adverse party acted unnecessarily and unreasonably in moving to dissolve an already defective order. Here the undertaking was also apparently issued (on Apr. 16, 1981) before the preparation of the papers submitted (dated and filed Apr. 23, 1981), and Surety is similarly estopped to attempt to limit its liability by relying upon the ambiguities in the order it was furnished to obtain.

 Moreover, we conclude that the trial court properly determined on the record before it that the release of attachment order covered both the Wells Fargo checking accounts and real property which together with the accounts had a total value of at least $55,000.[8]

The writ of attachment specifically described, in attachment 3 thereto, both the money in the checking accounts and Armes' four parcels of real property as the property subject to attachment. It directed the sheriff "to attach [such] property *or so much thereof as is clearly sufficient to satisfy the amount to be secured by the attachment*" (Italics added). The levying officer is also directed by statute, upon instructions from the plaintiff or his counsel, to levy upon the property described in the writ or so much thereof as is clearly sufficient to satisfy the amount to be secured by the attachment. (Code Civ. Proc., § 488.030, subd. (b).)[9] In the moving papers to enforce

---

[8]The judge who was required to determine the scope of the order releasing attachment in ruling upon plaintiffs' motion to enforce liability of Surety was not the judge who had issued that order.

[9]The substance of section 488.030 has been recodified effective July 1, 1983, as section 488.020.

Surety's liability, plaintiffs' counsel informed the court that soon after the issuance of the writ of attachment, counsel had instructed the Santa Clara County Sheriff to levy upon Armes' interest in the three deposit accounts and, if the deposits were not sufficient to secure the plaintiffs' claim of $55,000, to levy upon the four parcels of real property.[10] The trial court could therefore properly infer that the sheriff had performed his duty and levied upon both the personal and real property to the extent sufficient to satisfy the $55,000 secured by the attachment.

 ██ In its memorandum decision, the court found that Armes' application for discharge of attachment and release of "all of defendant's property which has been attached or is subject to attachment" and the order releasing "all property" was intended to include, but was not limited to, the bank accounts, and that the value of the real property released from attachment was to be included within the limits of the bond.[11] In so ruling, the court held that the application and order, having been prepared and submitted by Armes, was to be construed most strongly against him and most favorably for the plaintiffs. The court went on to find that the value of the real property plus the $30,650.86 in the described bank accounts together made up the $55,000 covered by the bond.[12]

██ We agree that the application and order, which were prepared and obtained ex parte by Armes' counsel, must be construed most favorably for the plaintiffs and against Armes and Surety. So construing the application and order, we conclude that the trial court's ruling was proper on either of the following bases.[13] The application and order could be construed as re-

---

[10]This was set forth in the points and authorities filed in support of the motion. Section 1058a requires that the notice of motion be supported by an affidavit or affidavits setting forth the facts on which the claim is based. While we find sufficient facts in the record to support plaintiffs' claim, they are not all set forth in the supporting affidavit. From the abbreviated record before us it does not appear that any objection to the sufficiency of the affidavit was raised below (the affidavit of Surety's counsel merely stated that plaintiffs' counsel had supplied him with certain documents and that he understood the sheriff's return of garnishment reflected $30,650.86 in the bank accounts, and no reference is made in Surety's points and authorities to plaintiffs' supporting affidavit); therefore, we must assume that any such objections were waived.

[11]Surety's obligation was actually on an undertaking. In California there is no difference in liability for bonds and undertakings. (Civ. Code, § 2809; *Moore* v. *Ohio Casualty Ins. Co.* (1983) 140 Cal.App.3d 988, 995 [189 Cal.Rptr. 829].)

[12]As there was no evidence of the actual value of the real property, the court presumed that its value was $24,349.14, the difference between the $55,000 secured by the writ and the $30,650.86 in the accounts. We believe that the court, sitting in Santa Clara County, could and did judicially notice the fact that four parcels of real property in that county, three of which were improved, would not have a total value of less than $24,349.14 in 1981. There has been no suggestion that the properties were worth a lesser amount.

[13]The memorandum decision did not set forth the court's reasoning in arriving at its conclusion.

leasing all property which had been subject to attachment in the proceedings, and, therefore, the parcels of real property, which had been specifically described in attachment 3 of the writ of attachment, were included therein. Alternatively, the order could be construed as releasing only property which had been levied upon, and the court had adequate information before it to infer that the sheriff had performed his duty and levied upon as much of the personal and real property as was required to satisfy the $55,000 secured by the writ. Under either theory, the court's order awarding judgment in favor of plaintiffs and against Surety in the sum of $55,000 was proper on the record before it.[14]

Plaintiffs (respondents) have asked this court to take judicial notice, pursuant to Evidence Code sections 452, subdivision (h), and 459, subdivision (a), of the fact that on December 1, 1980, the Santa Clara County Sheriff recorded with the County Recorder a "Notice of Sheriff's Attachment of/Levy on Real Property" with respect to real property belonging to Armes, and also recorded copies of notices of attachment, the writ and the right to attach order. Due to the conclusions we have reached above, we need not address the issue of whether this court should take judicial notice of these matters which were apparently not before the court below.

The judgment is affirmed.

Miller, J., and Smith, J., concurred.

---

[14]Surety's reliance upon *Moore* v. *Ohio Casualty Ins. Co., supra,* 140 Cal.App.3d 988, *Skolsky* v. *National Automobile & Cas. Ins. Co.* (1967) 254 Cal.App.2d 253 [62 Cal.Rptr. 207], and *Curtin* v. *Harvey* (1898) 120 Cal. 620 [52 P. 1077], is misplaced. Those cases held that judgment should not be granted for more than the value of the property covered by the bond in each case. Here judgment was not granted for more than the value of the property covered by Surety's undertaking.