[No. B016953. Second Dist., Div. One. July 30, 1987.]

PAUL R. ELDER et al., Plaintiffs and Respondents, v.
CARLISLE INSURANCE COMPANY, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part A of the "DISCUSSION" section.

COUNSEL

Vallette & Bassin and Michael Robert Bassin for Defendant and Appellant.

Hecht, Diamond & Greenfield, Ira D. Riskin, Jeffer, Mangels & Butler and Herbert A. Bernhard for Plaintiffs and Respondents.

OPINION

DEVICH, J.—When a trial court conditions the expungement of a notice of lis pendens (hereafter lis pendens) upon the defendant giving the plaintiff

an undertaking (Code Civ. Proc., § 409.1)[1] and the plaintiff prevails in the underlying lawsuit solely on one or more causes of action that would *not* support the recordation of a lis pendens, may the plaintiff satisfy the judgment out of the proceeds of the undertaking? ██ We conclude that a plaintiff may not do so and therefore reverse the trial court's judgment enforcing liability on the bond[2] (§ 996.440).

## BACKGROUND

In July 1979, Charles Hill and Paul Elder entered into a written option agreement (hereafter the Hill-Elder option) whereby Elder obtained the exclusive right to purchase certain real property (hereafter the Agoura property) owned by Hill. Charles Hill's wife, Dorothy, became a party to the Hill-Elder option on December 9, 1980.

On January 8, 1981, Agoura Investment Company (hereafter Agoura), a general partnership consisting of Elder and Jack Barnes, and Larwin Construction Company (hereafter Larwin) entered into a written option agreement whereby Larwin obtained the right to purchase the property rights held by Elder under the Hill-Elder option.

A joint complaint filed on August 14, 1981, by Elder, Barnes, Agoura, and Larwin (hereafter collectively referred to as plaintiffs), alleged that, despite Elder's valid exercise of his option to purchase the Agoura property, the Hills conveyed legal title to the Agoura property to General Software, Inc. (hereafter General). A lis pendens was recorded concurrently with the complaint.

On November 13, 1981, plaintiffs filed an amended complaint against the Hills and General (hereafter collectively referred to as defendants) for specific performance, breach of contract, declaratory relief, constructive trust, quiet title, and fraud. Various cross-complaints not pertinent to this appeal were filed by the parties.

On August 26, 1982, defendants filed a motion to expunge the lis pendens or, in the alternative, to require plaintiffs to give an undertaking pursuant to

---

[1] Code of Civil Procedure section 409.1 provides, in pertinent part: "The court, as a condition of granting or denying the motion to expunge, may require that the party prevailing upon such motion give the other party an undertaking of such nature, and in such amount as shall be fixed by the court, such undertaking to be to the effect that such prevailing party will indemnify the other party for all damages which he may incur if he ultimately prevails in the action."

Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

[2] In terms of liability, California draws no distinction between undertakings and bonds. (*First* v. *Armes* (1983) 146 Cal.App.3d 633, 639, fn. 11 [194 Cal.Rptr. 171].)

section 409.1. The trial court concluded that plaintiffs failed to demonstrate they commenced or prosecuted the action for a proper purpose and in good faith and granted the motion to expunge on the condition that defendants give a corporate surety bond in the amount of $200,000.[3] Carlisle Insurance Company (hereafter Carlisle), the appellant herein, issued the corporate surety bond on behalf of defendants.

After the motion to expunge the lis pendens was granted, Elder, Barnes, and Agoura, only, filed a second amended complaint on March 11, 1983, seeking various judicial determinations, including "a declaration that ELDER and AGOURA are no longer obligated to pursue the remedy of specific performance against the Hills pursuant to the Larwin Agreement . . . [and] a declaration that Plaintiffs are entitled to restitution of all sums expended by them in connection with the improvements on the [Agoura property]."[4]

On April 7, 1983, Larwin separately filed a second amended complaint for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, quasi contract, and equitable lien based, in part, on the above mentioned improvements made to the Agoura property.

On September 9, 1983, defendants filed a motion to remove the requirement of a corporate surety bond on the ground that plaintiffs' second amended complaints no longer stated causes of action that could properly support the recordation of a lis pendens. This motion was denied on October 4, 1983.

On January 23, 1985, judgment was rendered against defendants and in favor of Larwin in the amount of $300,000 plus costs, and in favor of Elder, Barnes, and Agoura in the amount of $175,000 plus costs. The basis of the judgment was unjust enrichment. No appeal was taken from the judgment.

On June 17, 1985, Elder, Barnes, and Agoura filed a motion to enforce liability on the corporate surety bond issued by Carlisle. A similar motion was filed by Larwin on July 10, 1985.

---

[3] The propriety of the order expunging the lis pendens is not before this court.

[4] The second amended complaint referred to the following improvements made to the Agoura property: "Plaintiffs and LARWIN collectively expended amounts in excess of $400,000.00 to improve the Subject Property by having subdivision maps prepared and approved, by securing governmental approval of subdivision plans and issuance of conditions use permits, having environmental impact reports issued, by conducting soils, engineering, architectural and survey studies, by having blanket easements removed from the Subject Property, paying for installation of sewerage systems servicing the Subject Property, and by undertaking other efforts and expending other sums of money in performance of the Option Agreement, increasing the value of the Subject Property from the contract price of $2,600,000 to the market value price at the time of breach in excess of $4,500,000."

On September 11, 1985, the trial court granted both motions and entered judgment pursuant to section 996.440, subdivision (d), in favor of Larwin in the sum of $126,034.43 plus interest and attorneys' fees and in favor of Elder, Barnes, and Agoura in the sum of $73,965.57 plus interest and attorneys' fees. It is from this judgment that Carlisle appeals.

## DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . .*

B. Does an undertaking given pursuant to section 409.1 protect against damages which do not result from the expungement of the lis pendens?

1. History of section 409.1[6]

The history of section 409.1 was detailed in *Malcolm* v. *Superior Court* (1981) 29 Cal.3d 518, 524-525 [174 Cal.Rptr. 694, 629 P.2d 495], as follows: "The Legislature enacted section 409.1 in 1968 in an attempt to alleviate problems which had arisen from the misuse of notices of lis pendens. [Citation.] Prior to 1968, as now, section 409 permitted any plaintiff who had filed a lawsuit claiming an interest in real property to record a notice of lis pendens without prior court approval or supervision. Because the recording of a lis pendens placed a cloud upon the title of real property until the pending action was ultimately resolved, a time period frequently encompassing several years, the lis pendens procedure was susceptible to serious abuse, providing unscrupulous plaintiffs with a powerful lever to force the settlement of groundless or malicious suits. [Citations.]

---

* See footnote, *ante,* page 1313.

[6] Current section 409.1 provides: "At any time after notice of pendency of an action has been recorded pursuant to Section 409 or other law, the court in which the action is pending shall, upon motion of a party to the action supported by affidavit, order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that: [¶] (a) The action does affect title to or right of possession of the real property described in the notice; and [¶] (b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith. . . . [¶] The court, as a condition of granting or denying the motion to expunge, may require that the party prevailing upon such motion give the other party an undertaking of such nature, and in such amount as shall be fixed by the court, such undertaking to be to the effect that such prevailing party will indemnify the other party for all damages which he may incur if he ultimately prevails in the action."

"Before the enactment of the expungement legislation in 1968 there was no meaningful prejudgment procedure either to identify those instances in which the lis pendens remedy was being abused or to alleviate the potential harm caused by such abuse. The Legislature adopted section 409.1 et seq. to afford such a remedy.

"As originally enacted in 1968, section 409.1 provided for the prejudgment expungement of a lis pendens if the party seeking expungement could demonstrate 'by clear and convincing proof' that, inter alia, the person recording the lis pendens had commenced the action 'for an improper purpose and not in good faith.' (Stats. 1968, ch. 815, § 1, p. 1572.) Although this initial version of the statute provided some relief from the problems that had engendered the provision's enactment, after several years the provision began to draw serious criticism as commentators noted that the statute placed on the party seeking expungement a burden of proof which was so difficult to carry that a motion to expunge could succeed in only the most flagrant cases of abuse. [Citation.]

"In response to such criticism, the Legislature in 1976 amended section 409.1 in two significant respects. (Stats. 1976, ch. 27, § 1, pp. 42-43.) First, the Legislature transferred the burden of proof or persuasion from the party seeking to expunge the lis pendens to the party opposing the motion to expunge; thus, whereas the 1968 statute placed the burden on the party seeking expungement to demonstrate that the underlying action had been brought for an improper purpose and not in good faith, the present provision requires the party who has filed the lis pendens to show to the satisfaction of the court that he has commenced or prosecuted the action for a proper purpose and in good faith. Second, the Legislature altered the quantum of proof necessary to justify the expungement of the lis pendens; whereas the 1968 statute had authorized expungement only when the court was satisfied by 'clear and convincing proof' that the action had been brought, inter alia, for an improper purpose or not in good faith, the 1976 amendment lowered the threshold of proof that is needed to support a ruling in favor of expungement, providing for expungement whenever the trial court is not convinced by a 'preponderance of the evidence' that the action had been commenced for a proper purpose and in good faith." (Italics omitted.)

2. Interpretation

Plaintiffs assert that the language used in section 409.1 (i.e., "such undertaking to be to the effect that . . . [the party prevailing on the expungement motion] will indemnify the other party for all damages which he may incur if he ultimately prevails in the [underlying] action") is clear in meaning and

encompasses all monetary relief awarded in the underlying action. We disagree.

Plaintiffs' proposed interpretation of section 409.1 would permit a party who obtained a judgment solely on a cause of action that would not support the recordation of a lis pendens to satisfy that judgment out of the undertaking given as a condition of expungement of the lis pendens. As a result, a party who improperly recorded a lis pendens and then became the beneficiary of an undertaking ordered as a condition of its expungement would be in a better position than a party who properly refrained from recording an unjustified lis pendens. It is thus apparent that plaintiffs' interpretation of section 409.1 is illogical and would lend itself to the type of abuse that led to the creation of the expungement statutes in the first place.

■ In construing a statute, a court should give meaning to the entire statute and avoid an interpretation that would effectively nullify a portion of the statute. (§ 1858; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Carleson* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 145, 155-156 [134 Cal.Rptr. 278].) However, the interpretation proposed by plaintiffs would render meaningless that portion of section 409.1 which permits a trial court to require the party recording the lis pendens to give an undertaking as a condition of nonexpungement. In such a situation, the property owner who prevailed in the underlying action would obtain a judgment in his favor but would not be awarded "damages" as that term is used in section 409.1.

■■■■ ■ The only interpretation of section 409.1 which gives meaning to all of the language contained in the statute and avoids unfair results is that an undertaking given as a condition of expungement or nonexpungement of a lis pendens serves to protect only against damages that actually result from the expungement or nonexpungement.[7]

It necessarily follows that a party who is given an undertaking as a condition of the expungement of a lis pendens pursuant to section 409.1 and who prevails in the underlying action solely on a cause of action that does not support the recordation of a lis pendens, may not satisfy that judgment out of the undertaking.

---

[7] See *Stewart Development Co.* v. *Superior Court* (1980) 108 Cal.App.3d 266, 277 [166 Cal.Rptr. 450], where the court interpreted the similar language contained in section 409.2 as protecting only against damages "proximately resulting from the expungement of the lis pendens." It is well established that, absent a contrary expression by the Legislature, a phrase common to statutes dealing with the same subject matter must be given the same meaning. (*Hunstock* v. *Estate Development Corp.* (1943) 22 Cal.2d 205, 210-211 [138 P.2d 1, 148 A.L.R. 968]; *Gonzales & Co.* v. *Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172, 178 [138 P.2d 1, 148 A.L.R. 968].)

### 3. Application

In the case at bench, judgment in the underlying action was rendered on the basis of unjust enrichment for improvements made to the Agoura property. Since a cause of action for unjust enrichment does not support the recordation of a lis pendens,[8] the trial court erred in permitting plaintiffs to satisfy the judgment out of the undertaking.

### DISPOSITION

The judgment enforcing liability on the bond given pursuant to section 409.1 is reversed. The parties to bear their own costs on appeal.

Spencer, P. J., and Lucas, J., concurred.

---

[8] Elder, Barnes, and Agoura, who prevailed on their unjust enrichment cause of action, claim, based on *Garcia v. Atmajian* (1980) 113 Cal.App.3d 516, 521 [169 Cal.Rptr. 845], that an equitable lien exists on the Agoura property. Citing *Okuda v. Superior Court* (1983) 144 Cal.App.3d 135, 141 [192 Cal.Rptr. 388], they further assert that such an equitable lien supported the recordation of a lis pendens. Even if this interpretation of *Garcia* were correct, we disagree with *Okuda*'s holding that an action seeking the imposition of an equitable lien supports the recordation of a lis pendens. Instead, we choose to follow the well-reasoned opinion in *Urez Corp. v. Superior Court* (1987) 190 Cal.App.3d 1141 [235 Cal.Rptr. 837], which held that "allegations of equitable remedies . . . will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages." (*Id.* at p. 1149.)