135 Cal.Rptr.2d 861 (2003)
109 Cal.App.4th 1275
Cynthia KIRKEBY, Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Frederick W. Fascenelli et al. Real Parties in Interest.
No. G031262.
Court of Appeal, Fourth District, Division Three.
June 19, 2003.
Review Granted October 1, 2003.
*862 Rick Augustini, Newport Beach, for Petitioner.
No appearance for Respondent.
Callahan & Blaine, Jim P. Mahacek, Michael J. Sachs, and Kathleen L. Dunham, Santa Ana, for Real Parties in Interest.

OPINION
SILLS, P.J.
This case requires us to decide whether a complaint that pleads a cause of action to set aside a fraudulent conveyance affects title to or the right to possession of specific real property so as to support a lis pendens. We agree with the trial court that this particular complaint does not support a lis pendens, and we deny relief from the trial court's order expunging the lis pendens and awarding attorney fees to the prevailing party.

FACTS
Cynthia Kirkeby petitions for relief from an order of the superior court expunging two notices of lis pendens that she recorded in connection with her derivative action against the officers, directors, and attorneys of FasTags, Inc. (FasTags). The trial court expunged the notices of lis pendens because it found Kirkeby had not stated a real property claim as required by Code of Civil Procedure section 405.4.[1] Kirkeby contends her causes of action to annul fraudulent conveyances are sufficient *863 to state a real property claim; she also seeks relief from the court's order imposing attorney fees for bringing the motion to expunge, claiming the trial court abused its discretion.
The facts alleged in the first amended complaint are assumed to be true for purposes of our "demurrer-like" review of whether the pleadings state a real property claim. (BGJ Associates v. Superior Court (1999) 75 Cal.App.4th 952, 957-958, 89 Cal.Rptr.2d 693; §§ 405.4, 405.31.) The first amended complaint alleges that FasTags is a manufacturer and wholesale seller of pet identification tags. Kirkeby developed the idea for the tags with her brother, Frederick Fascenelli, and they jointly hold the patent for the processes used in the tags' manufacture. FasTags was incorporated in 1994; Frederick and his wife, Diana Fascenelli (collectively, the Fascenellis), control 51 percent of the outstanding stock in FasTags; Kirkeby owns 39 percent; and the FasTags Stock Trust, of which Kirkeby is the trustee, owns 10 percent.
In 1998, Kirkeby resigned from Fas-Tags' board of directors. Following her resignation, the Fascenellis allegedly began looting the corporation through fraud and self-dealing. They caused the corporation to sign improper patent license agreements with Frederick, increase the salaries and bonuses of the Fascenellis, pay their personal expenses, and make them improper loans. To maintain control, the Fascenellis prevented Kirkeby from inspecting the corporation's books and records, canceled annual meetings to prevent her from electing a member of the board of directors, and removed and appointed directors without board approval. When Kirkeby needed corporate records for her pending divorce action, the Fascenellis refused to cooperate and caused their accountants to render a false valuation of her interest.
Kirkeby was reelected to the FasTags board of directors in July 2001, and she filed her original action shortly thereafter. She filed the first amended complaint in May 2002. In 27 causes of action, she seeks declaratory and injunctive relief and aggregate damages in the amount of $4.9 million on behalf of FasTags and herself. Individually, Kirkeby seeks a declaration of her inspection rights and recovery of her attorney fees incurred while fighting for documents during her divorce action. Derivatively, she seeks disgorgement of moneys wrongfully paid to the Fascenellis, disgorgement of fees paid to corporate attorneys and accountants, removal of certain directors, orders voiding the patent license agreements, and damages for fraud and various breaches of fiduciary duty.
The fraudulent conveyance cause of action is based on allegations that Frederick obtained a $50,000 loan from FasTags based on his "representation ... that he was going to use the proceeds to purchase or construct a building to house the operations of FasTags." Frederick, however, used the money to purchase a residential income property (the Oak Street Property) in June 2000 for himself and Diana, immediately transferring their interest in the property to Italy & Greek Holdings, a family limited partnership the Fascenellis had formed in 1999 (the Family Partnership). In May 1999, Frederick transferred his interest in the family residence (the Clark Street Property) to the Fascenelli Family Trust. A few months later, he and Diana, as co-trustees of the trust, transferred its interest in the Clark Street Property to the Family Partnership. In the third cause of action, Kirkeby alleges the Fascenellis hold the $50,000 in constructive trust for FasTags and, to the extent the value of the Oak Street Property has increased, are required to disgorge the profits. In the fifteenth cause of action, she alleges "that Defendants made *864 these transfers with the actual intent to hinder, delay and/or defraud all of their creditors in the collection of their claims, and with the knowledge of the malfeasance of Fred Fascenelli and Diana Fascenelli, including Plaintiff and FasTags"; she prays that the transfers of the residence and the income property to the Family Partnership be "annulled and declared void as to Plaintiff to the extent necessary to satisfy the claims alleged herein."
Shortly after the filing of the first amended complaint, Kirkeby recorded notices of lis pendens on the Oak Street Property and the Clark Street Property, and the Fascenellis moved to expunge. The trial court granted the motion, finding that the complaint was primarily about monetary damages. "[The] first amended complaint has 27 causes of action. The only cause of action that appeared to address any real property [was] 15 ..., which allege[s] fraudulent conveyances .... The recording of a lis pendens is not appropriate, referring to the Urez [Corp. v. Superior Court (1987) 190 Cal. App.3d 1141, 235 Cal.Rptr. 837] and La Paglia [v. Superior Court (1989) 215 Cal. App.3d 1322, 264 Cal.Rptr. 63] cases. [Neither is it appropriate] where a claim for fraudulent conveyance or imposition of a constructive trust [is made] and no ownership or possessory interest is claimed in the property. This is really a monetary damages case." The trial court awarded "sanctions" against Kirkeby in the amount of $600.

DISCUSSION
A party to an action asserting a real property claim may record a notice of pendency of the action, or lis pendens, in the county where the property is located, thereby giving constructive notice of the pending action to a subsequent purchaser or encumbrancer of the affected property. (§§ 405.20, 405.24.) The right to record a lis pendens is limited to those asserting a real property claim, which is defined as "the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the use of an easement identified in the pleading, other than an easement obtained pursuant to statute by any regulated public utility." (§ 405.4.)
A notice of lis pendens is easily recorded, immediately clouding the title to the property and preventing its transfer. (Urez Corp. v. Superior Court, supra, 190 Cal.App.3d 1141, 1145, 235 Cal.Rptr. 837.) "As a result of the historic growth in secured real property financing and the now nearly universal use of title insurance to insure title, the recordation of a lis pendens gives a claimant a de facto, if not a de jure, provisional remedy. The cloud created on title generally precludes either sale or encumbrance of the affected property for the duration of the action." (Code Comment, 14 West's Ann.Code (2003 supp.) com.2 foil., § 405.32, p. 225.) The lis pendens procedure has been criticized because of its obvious potential for abuse. The financial pressure created by an improperly recorded lis pendens can force settlement of groundless suits without subjecting the recording party to the requirement for posting attachment bonds. (Brownlee v. Vang (1962) 206 Cal.App.2d 814, 817, 24 Cal.Rptr. 158.)
A property owner can remove an improperly recorded lis pendens by bringing a motion to expunge. (§ 405.30.) The grounds for expungement are: (1) invalid service of the notice of recordation (§ 405.22); (2) failure to plead a real property claim (§ 405.31); (3) failure to establish the probable validity of the real property claim (§ 405.32); and (4) a showing that "adequate relief can be secured to the claimant by the giving of an undertaking" (§ 405.33). A motion to expunge for failure to plead a real property claim requires *865 judicial examination of the pleadings. "The analysis required ... is analogous to, but more limited than, the analysis undertaken by a court on a demurrer. Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim." (Code Comment, supra, com.2 foil. § 405.31, p. 224.) The burden of proof is on the claimant. (Code Comment, supra, com. 4 foil. § 405.30, p. 223.)
The Fascenellis' motion to expunge was based on the lack of a real property claim, not its probable validity. Accordingly, we conduct a "demurrer-like" review of the pleadings to determine whether Kirkeby has pleaded a real property claim for purposes of lis pendens law. (BGJ Associates v. Superior Court, supra, 75 Cal.App.4th at p. 956, 89 Cal.Rptr.2d 693.) Unfortunately, neither the statute nor the case law has provided any abstract definition of a claim that "`affect[s] ... title to, or the right to possession of,' specific real property." (Id. at p. 967, 89 Cal.Rptr.2d 693.) In the most recent revision to the lis pendens law, the Legislature chose to leave the definition "for judicial development." (Code Comment, supra, com. 5 foil. § 405.4, p. 215.) "Current law is in conflict regarding the availability of the lis pendens procedure in cases claiming a constructive trust or equitable lien.... Should case law continue to allow use of the lis pendens procedure in cases claiming a constructive trust or equitable lien, any abuse which might have previously occurred should be mitigated by the provisions of CCP 405.32 (requiring proof by the claimant of the probable validity of the claim) and the provisions of CCP 405.34 (allowing the court to require a bond from the claimant). Moreover, the provisions of CCP [405.8], which continue prior law maintaining the availability of injunction, attachment or other relief in connection with a real property claim, should also reduce any perceived need for availability of the lis pendens procedure in cases involving allegations of fraudulent or deceptive conduct leading to claims for a constructive trust or equitable lien." (Ibid.)
In granting the motion to expunge, the trial court here relied on Urez Corp. v. Superior Court, supra, 190 Cal.App.3d 1141, 235 Cal.Rptr. 837 and La Paglia v. Superior Court, supra, 215 Cal.App.3d 1322, 264 Cal.Rptr. 63. Both of these cases wrestled with the question of whether an action to impose a constructive trust on real property is an action affecting title or possession to real property so as to support a notice of lis pendens.
In Urez, the plaintiff held a defunct second trust deed on property that was acquired at a foreclosure sale by the defendants. Plaintiff brought an action against the defendants alleging fraud and deceit; he sought a declaration that he was the owner of a beneficial interest in the property and the imposition of a constructive trust "for the purpose of securing payment of amounts due under the second." (190 Cal.App.3d at p. 1144, 235 Cal.Rptr. 837.) He recorded a notice of lis pendens, and the trial court denied defendants' motion to expunge. (Ibid.)
The court reversed, finding the case was "essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien. [Plaintiff] does not claim any ownership or possessory interest in the subject property. ... [¶] ... [¶] ... At bottom, the `beneficial' interest [Plaintiff] claims in the subject property is for the purpose of securing a claim for money damages.... [¶] ... [Allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages. *866 It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes." (Urez Corp. v. Superior Court, supra, 190 Cal.App.3d at p. 1149, 235 Cal.Rptr. 837.)
In La Paglia v. Superior Court, supra, 215 Cal.App.3d 1322, 264 Cal.Rptr. 63, the plaintiff sued his lessee, a mining company, for wrongfully withholding royalties on the amounts mined* seeking money damages for waste, damage to real property, trespass and conversion, and an accounting. In an unjust enrichment cause of action, the plaintiff alleged the lessee used $1.5 million in wrongfully withheld royalties to purchase a piece of real property in Riverside. The plaintiff sought the imposition of a constructive trust on that property and recorded a lis pendens against it.
The court contrasted the pretrial remedy of lis pendens, "a device designed to protect third parties rather than provide plaintiffs with an unfair advantage in litigation," with the constructive trust remedy, "a device created to prevent unjust enrichment," and held the lis pendens must be expunged. (La Paglia v. Superior Court, supra, 215 Cal.App.3d at pp. 1326-1327, 264 Cal.Rptr. 63.) It pointed out that the property was not unique to the plaintiff and his claims could be satisfied by a money judgment. "Where, as here, the purpose of the constructive trust is only to secure payment of a debt, the plaintiff, like other creditors[,] must rely upon prejudgment attachment procedures." (Id. at p. 1329, 264 Cal.Rptr. 63.)
Urez and La Paglia rejected the reasoning of two earlier cases from the same court, Coppinger v. Superior Court (1982) 134 Cal.App.3d 883, 185 Cal.Rptr. 24 and Okuda v. Superior Court (1983) 144 Cal. App.3d 135, 192 Cal.Rptr. 388. Coppinger and Okuda held that a constructive trust and an equitable lien were actions affecting title to or possession of real property within the meaning of the lis pendens statutes. (See also Wardley Development Inc. v. Superior Court (1989) 213 Cal.App.3d 391, 394 & fn. 3, 262 Cal.Rptr. 87 [reasserting Urez's rejection of Coppinger and Okuda]; Elder v. Carlisle Ins. Co. (1987) 193 Cal.App.3d 1313, 1320, fn. 8, 238 Cal. Rptr. 897 [disapproving Coppinger and Okuda]; Moseley v. Superior Court (1986) 177 Cal.App.3d 672, 677, 223 Cal.Rptr. 116 [questioning Coppinger]; Deane v. Superior Court (1985) 164 Cal.App.3d 292, 296-297, 210 Cal.Rptr. 406 [distinguishing Coppinger]; Burger v. Superior Court (1984) 151 Cal.App.3d 1013, 1018, 199 Cal.Rptr. 227 [questioning Coppinger].)
Kirkeby argues that her case is not controlled by Urez or La Paglia because she has alleged a fraudulent conveyance, which by definition affects title to real property. She cites Hunting World, Inc. v. Superior Court (1994) 22 Cal.App.4th 67, 26 Cal. Rptr.2d 923 in support of her position. In Hunting World the plaintiff filed an action for trademark infringement in federal court, seeking money damages and a constructive trust over profits realized from the infringement. Several weeks later, the defendant quitclaimed his interest in their residence to his wife. Plaintiff filed a complaint in state court to set aside the conveyance as fraudulent and recorded a notice of lis pendens against the residence. The trial court granted the defendants' motion to expunge, equating the fraudulent transfer action with an action seeking to impose a constructive trust or equitable lien. "Implicitly, the [trial] court decided the fraudulent transfer action does not affect title to or the right to possession of real property because Hunting World is not seeking title to the property but a way to reach assets of [defendant] in the event of a money judgment in federal court *867 against him." (Id. at p. 69, 26 Cal.Rptr.2d 923.)
On appeal, the court found the lis pendens should not be expunged because an action to set aside a fraudulent conveyance of real property falls within the "clear wording of the `real property claim' prong of lis pendens law...." (Hunting World, Inc. v. Superior Court, supra, 22 Cal. App.4th at p. 73, 26 Cal.Rptr.2d 923.) The court found the notice of lis pendens would not pose an "intolerable burden on real property owners" because the claimant was required to show the probable validity of his action. (Id. at p. 74, 26 Cal.Rptr.2d 923.) Even if the claimant did so, the trial court could expunge the lis pendens and require the claimant to post a bond. Finally, "[i]f the transfer was legitimate, a property owner should be able to defeat the lawsuit by demurrer, summary judgment motion, or prompt trial." (Ibid.)
The court distinguished the Urez line of cases because each of them involved an equitable lien or constructive trust that was appended to an action for money damages. "Those courts could conclude that the actions covered by those notices of lis pendens primarily sought money damages and did not affect title to real property." (Hunting World, Inc. v. Superior Court, supra, 22 Cal.App.4th at p. 74, 26 Cal. Rptr.2d 923, original italics.) Here, however, the sole cause of action was the one to set aside the fraudulent conveyance. But pointing out the availability of sanctions, the court warned, "This ruling must not be interpreted by creditors as a green light to tie up real property by filing baseless or questionable fraudulent transfer complaints, recording notices of lis pendens, and waging prolonged battles over expungement." (Ibid.)
Kirkeby contends Hunting World stands for the proposition that a cause of action to set aside a fraudulent conveyance is, ipso facto, a real property claim for purposes of a notice of lis pendens. But the case did not eliminate the necessity for a trial court to look at the main purpose of the complaint. In Lewis v. Superior Court (1994) 30 Cal.App.4th 1850, 37 Cal.Rptr.2d 63, the court stated, "[W]hile in the abstract ... a fraudulent conveyance claim can support a lis pendens, the application of this rule in a given case depends on the specific nature of the claim." (Id. at p. 1865, 37 Cal.Rptr.2d 63.) This approach was followed in BGJ Associates v. Superior Court, supra, 75 Cal.App.4th 952, 89 Cal.Rptr.2d 693, where the court analyzed a claim for constructive trust that was analogous to a specific performance claim to determine if it supported a notice of lis pendens.
In BGJ, the plaintiffs alleged that they and the defendants had formed a joint venture to buy certain real properties, but the defendants wrongfully acquired the properties for themselves, to the exclusion of the plaintiffs. "Plaintiffs assert multiple causes of action for breach of oral contract, breach of fiduciary duty, unjust enrichment, intentional and negligent interference with contractual relations, inducing breach of contract, and imposition of constructive trust." (75 Cal.App.4th at pp. 958-959, 89 Cal.Rptr.2d 693.) The plaintiffs filed a notice of lis pendens, which the trial court expunged for lack of a real property claim. On appeal, the court acknowledged that unlike the line of cases eschewing an action for constructive trust as a real property claim, the plaintiffs did not seek a constructive trust remedy solely as collateral for money damages: "In part they seek to be awarded title to the same specific real property, the property they bargained for, which is the subject of the same wrongful conduct giving rise to the constructive trust remedy in the first place. [Citation.] They analogize to a specific performance action, which unquestionably supports a lis pendens. They say *868 the only difference here is that plaintiffs were deprived of the specific property by the wrongful conduct of their own copurchasers rather than of a defaulting seller." (Id. at p. 971, 89 Cal.Rptr.2d 693, original italics.)
The court noted the specific performance cases that "unquestionably" supported a lis pendens were actions solely for specific performance. Looking at the complaint as a whole, it observed that nine causes of action sought compensatory and punitive damages on fraud and tort theories and only two focused "narrowly" on the imposition of a constructive trust. It concluded, "In a case such as this where the pleading combines theories of liability for monetary damages and for a constructive trust, we hold that plaintiffs should not be able to maintain a lis pendens. The danger is too great that a lis pendens, which effectively renders the property unmarketable, will have the coercive effects condemned by the cases." (BGJ Associates v. Superior Court, supra, 75 Cal. App.4th at p. 972, 89 Cal.Rptr.2d 693.)
We find that the principles regarding a cause of action to impose a constructive trust, enunciated by the foregoing cases, apply equally to a cause of action seeking to set aside a fraudulent conveyance. In McKnight v. Superior Court (1985) 170 Cal.App.3d 291, 215 Cal.Rptr. 909, for example, the pleading of a fraudulent conveyance was held to support a lis pendens. There, the claimant had loaned money to the defendant and secured the loan by certain real property. The defendant defaulted, and the claimant filed a writ of attachment against the real property. The claimant obtained judgment, but before he could record his abstract of judgment, the defendant quitclaimed his interest in the real property to his former wife. The claimant filed an action to set aside the conveyance as fraudulent and to impose a constructive trust on the real property, and he recorded a lis pendens. The court held the pleading adequately stated a claim affecting title to real property. (Id. at p. 300, 215 Cal.Rptr. 909.)
The claimant in McKnight had a security interest in the real property that predated the action to set aside the fraudulent conveyance. His action clearly affected its title within the meaning of section 405.4. The gist of Kirkeby's complaint, on the other hand, is to curb abuses by her brother and sister-in-law to the family corporation and to recover money she claims was wrongfully diverted to them. With the exception of the cause of action for fraudulent conveyance, the complaint has nothing to do with real property. And the goal of the fraudulent conveyance cause of action is to make the property available for the collection of a judgment, not to further a claim by Kirkeby to title or possession. "Nothing in the case suggests the kind of real property dispute that has classically been the basis for the use of a lis pendens." (Lewis v. Superior Court, supra, 30 Cal.App.4th at p. 1864, 37 Cal.Rptr.2d 63.)
Kirkeby argues the Fascenellis' remedy is a motion to expunge based on lack of probable validity, which would force her to demonstrate the merits of the fraudulent conveyance action. But she misses the point of the statutory scheme. No matter how meritorious the cause of action, a lis pendens is improper if a real property claim is not pleaded.[2] And the Legislature has left it to the courts to decide, on a case-by-case basis, whether a particular pleading qualifies. With respect to constructive trusts, "the courts have been restrictive because of well-known *869 dangers that the lis pendens procedure can be abused to coerce a defendant to settle a claim, The courts have looked to the substance of the dispute to determine whether it is `essentially' a fraud action seeking money damages, with constructive trust allegations `appended.' [Citations.]" (BGJ Associates v. Superior Court, supra, 75 Cal.App.4th at pp. 971-972, 89 Cal. Rptr.2d 693.) We see no reason why a cause of action for fraudulent conveyance should not be subject to the same scrutiny.
Kirkeby contends there is no substantial evidence to support the trial court's award of attorney fees against her in the amount of $600, claiming she acted with substantial justification in recording the lis pendens.[3] Section 405.38 provides, "The court shall direct that the party prevailing on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion [to expunge] unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." (Italics added.) This mandatory language is a specific change from former section 409.3, which provided that the court may award reasonable attorney fees and costs to the prevailing party. (Code Comment, supra, foil. § 405.38, p. 230; Berk et al., Cal. Lis Pendens Practice (Cont.Ed.Bar 2d ed.1994) § 3.11, p. 100.) Had the trial court made a finding that Kirkeby acted with substantial justification or that the imposition of attorney fees would be unjust, the record would support it. But the trial court did not make such findings, nor did Kirkeby request them. We cannot say that the award of $600 was an abuse of discretion, especially in light of the declaration submitted by the Fascenellis' attorney that her fees for opposing the motion were in excess of $4,000.

DISPOSITION
The order to show cause is discharged and the stay of the trial court proceedings is lifted. The petition for writ of mandate is denied. In the interest of justice, each party shall bear his or her own costs on appeal.
WE CONCUR: O'LEARY, J. and MOORE, J.
NOTES
[1] All statutory references are to the Code of Civil Procedure.
[2] To the extent Hunting World, Inc. v. Superior Court, supra, 22 Cal.App.4th 67, 26 Cal. Rptr.2d 923 suggests otherwise, we respectfully disagree with it.
[3] Although the trial court used the word "sanctions" in making its award, we assume the award was one of attorney fees under section 405.38, which is what the Fascenellis requested in their moving papers.