215 Cal.App.3d 1390 (1989)
264 Cal. Rptr. 80
Conservator of the Person and Estate of FRANCIS STARR.
JOHN TRUITT et al., as Conservators, etc., Petitioners and Appellants,
v.
LISBETH HIBBARD et al., Objectors and Respondents.
Docket No. A042722.
Court of Appeals of California, First District, Division One.
November 22, 1989.
*1392 COUNSEL
Priscilla Camp for Petitioners and Appellants.
Jerome Marks for Objectors and Respondents.
OPINION
NEWSOM, Acting P.J.
This appeal presents a narrow jurisdictional question of the power of the superior court, sitting in probate, to set aside a deed executed by a conservator before the conservatee's death. The facts and procedural history relevant to this question can be briefly stated.
Francis Starr was a widower, residing in Berkeley, California, who experienced declining health in the years after the death of his wife and before his own death at age 89 on October 31, 1987. During a period of hospitalization, an adopted son, John Truitt, petitioned the Superior Court for the County of Alameda to be appointed conservator of Starr's person and estate. Following his appointment on April 24, 1987, Truitt sought to remedy what he perceived to be Starr's undue generosity toward two friends, Lisbeth Hibbard and Corrine Mason. By a deed dated November 1, 1984, Starr had given Lisbeth Hibbard a joint tenancy interest in his home at 2609 Webster Street in Berkeley. Without the benefit of a court order, Truitt executed a grant deed on June 23, 1987, transferring Starr's interest in the property to himself as conservator for the purpose of severing the joint tenancy. The deed was recorded on June 26, 1987. Later in the summer, another adopted son, Harrison Starr, was also appointed conservator of Francis Starr. About three months after their conservatee's death, the conservators filed a petition for a first and final accounting which disclosed the grant deed purporting to sever the joint tenancy.
Upon learning of the grant deed, Lisbeth Hibbard and Corinne Mason (hereafter respondents) petitioned the court to set aside the deed as part of the final accounting of the conservatorship. The court, acting through a court commissioner, Barbara Miller, set a hearing for arguments on this specific issue in April 1988. On May 5, 1988, Commissioner Miller issued an order, noted in the clerk's minutes, setting aside the grant deed and directing the conservators "to take all actions necessary to formally cancel said conveyance." The minute order instructed counsel for the conservators "to prepare an order for execution by the court in compliance with the terms of this ruling."
*1393 Unfortunately, the formal order complying with the minute order was signed on May 16, 1988, by a judge of the superior court who had no connection with the proceeding. On June 17, 1988, the conservators filed a notice of appeal from a pertinent paragraph in the minute order. Subsequently, on July 7, 1988, Commissioner Miller, sitting as judge pro tem of the superior court, entered a formal order nunc pro tunc as of May 16, 1988, setting aside the grant deed. The order stated in part: "This Amended Order is subject to the appeal now on file in this matter and appellants [the conservators] shall not be required to file an appeal to this Amended Order."
(1) We face the preliminary question of the adequacy of the notice of appeal. Respondents cite the rule that "where findings of fact or a further or formal order is required, an appeal does not lie from a minute order." (Herrscher v. Herrscher (1953) 41 Cal.2d 300, 304 [259 P.2d 901].) The rule is criticized by Witkin on the ground that it is inconsistent with the modern trend to construe notices of appeal to refer to an appealable order when they clearly notify the parties in a timely manner of the matter to be reviewed on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) § 91, p. 112; cf. Cal. Rules of Court, rule 2(c)[premature notice of appeal].) A case with closely parallel facts, Holden v. California Emp. etc. Com. (1950) 101 Cal. App.2d 427 [225 P.2d 634], exemplifies this judicial policy. The court was faced with the converse situation to that of the present case: appellant filed a notice of appeal from the judgment when the appeal properly lay  under the procedural rules of the time  from the minute order. The court held: "Where it is perfectly apparent, as it is here, that appellant seeks a review of an order of dismissal, and where, as here, the notice of appeal is filed in ample time from either the entry of the order or judgment, and where, as here, the notice of appeal is addressed to all respondents and to their attorneys so that no one is misled, and where, as here, no prejudice to respondents exists, the notice of appeal should be treated as being from the appealable order even if the notice incorrectly designates the `order' as a `judgment,' and erroneously gives the date of the entry of the judgment rather than that of the order." (Id. at p. 431.)
Although the respondents point to certain discrepancies between the minute order and the formal order, there is no real confusion as to the matter to be reviewed on appeal. Faced with an awkward procedural dilemma, conservators chose a course of action that gave clear notice to the opposing parties in the most timely fashion possible. In this factual context, we do not believe that Herrscher v. Herrscher, supra, 41 Cal.2d 300, bars this court from following the prevailing judicial policy of construing notices of appeal as referring to the proper order where, despite minor technical *1394 deficiencies, they in fact gave timely and adequate notice of the matter referred for appellate review.[1]
(2) Conservators appear to concede that Truitt acted beyond the scope of his statutory authority in executing the grant deed dated June 23, 1987. Probate Code section 2501, subdivision (a), provides: "... court approval is required for a compromise, settlement, extension, renewal, or modification which affects: [¶] (1) Title to real property."[2] They argue rather that Truitt's action in executing the deed should be upheld because "[t]he urgent facts of this case precluded conservators from obtaining court authority prior to the execution of the grant deed." But the record on appeal does not contain testimony or other evidence that would permit us to assess properly the equities of the situation, and conservators cite no authority for their supposition that equitable considerations may invest a well-intentioned conservator with powers that are not conferred by statute.
(3) Conservators rely chiefly on the contention that the superior court lacked authority to set aside the grant deed. A conservatorship is terminated by death of the conservatee. (Prob. Code, § 1860.) Thereafter, the jurisdiction of the superior court is delimited by Probate Code section 2630 which provides: "The termination of the relationship of ... conservator and conservatee by the death of either ... does not cause the court to lose jurisdiction of the proceeding for the purpose of settling the accounts of the guardian or conservator or for any other purpose incident to the enforcement of the judgments and orders of the court upon such accounts...."
The final accounting of a conservatorship undertakes to allow or disallow claims for expenses and to approve an inventory of the conservatorship estate. (See Johnstone et al., Cal. Conservatorships (Cont.Ed.Bar 1983) Accounting, ch. 12, p. 697.) The trial court considered that a proper accounting here required a ruling on the conservator's authority to execute the grant deed severing the joint tenancy: "I believe the issues he's raised are germane to the accounting and the court could not enter an order approving the account or disapproving the accounting without hearing these other matters." Disputing this position, conservators rely on cases holding that a court may not adjudicate claims with third parties in approving an accounting. (Guardianship of Breslin (1901) 135 Cal. 21, 22 [66 P. 962]; Guardianship of Vucinich (1935) 3 Cal.2d 235, 243 [44 P.2d 567]; Guardianship of Rapp (1942) 54 Cal. App.2d 461, 464 [129 P.2d 130].)
*1395 We conclude that the trial court correctly interpreted its jurisdiction. The court's power to enforce orders upon the conservatorship accounts implies power to adjudicate the authority of the conservator to take specific actions pursuant to all orders relating to the conservatorship, including the original order of appointment, that affect the account. Any action that may result in property being included or excluded from the estate inventory clearly affect the conservatorship accounts. Without ruling on the conservator's authority to take such an action, the court could make no definitive inventory of estate property.
The three cases cited by conservators no doubt state a sound rule: conservatorship proceedings are not a proper forum for adjudicationg of third party claims. But none of the cases concerns the authority of the conservator to take actions affecting the estate inventory. Conservatorship proceedings are commonly concerned with supervision of the conservator in the performance of the duties of his office. (See Prob. Code, § 2102.) The mere fact that a disputed action of the conservator affects a third party claim should not divest the court of jurisdiction to rule upon it.
The judgment is affirmed.
Holmdahl, J., and Stein, J., concurred.
NOTES
[1] Despite respondents' arguments to the contrary, the order entered nunc pro tunc as of May 16, 1988, is appealable under Probate Code section 2750, subdivisions (b) and (e).
[2] We do not reach respondents' further contention that, as residuary legatee under the will of Francis Starr, conservators acted under a conflict of interest that also required them to seek court approval of the severance of the joint tenancy.