[No. A066822. First Dist., Div. Two. Aug. 19, 1996.]

Conservatorship of the Estate of GERALD O'CONNOR.
JUDITH O'CONNOR, as Administrator, etc., Petitioner, v.
OLD REPUBLIC SURETY COMPANY, Objector.

OLD REPUBLIC SURETY COMPANY, Plaintiff and Respondent, v.
JUDITH O'CONNOR, as Administrator, etc., Defendant and Appellant.

---

**COUNSEL**

Martin N. Lettunich and Edward J. Niland, Jr., for Petitioner and for Defendant and Appellant.

Williams & Martinet and Leonard J. Martinet for Objector and for Plaintiff and Respondent.

---

**OPINION**

**HAERLE, J.—**

### I. INTRODUCTION

Judith O'Connor, administrator of the estate of Gerald O'Connor, appeals from a judgment rendered in favor of Old Republic Surety Company (Old Republic) which absolves Old Republic of liability for damage caused to the conservatorship estate of Gerald O'Connor by Richard Bronson (Bronson), a San Francisco attorney appointed to act as "successor conservator" for Gerald O'Connor's estate.[1] The judgment declares to be void both an April 9, 1992, order appointing Bronson successor conservator for Gerald O'Connor's estate, and letters of conservatorship issued to Bronson pursuant to that order. The judgment also rescinds a bond issued by Old Republic guaranteeing the faithful performance of Bronson's duties as successor conservator of Gerald O'Connor's estate.

We conclude that the order appointing Bronson successor conservator and letters of conservatorship issued to him are not void and that Old Republic is precluded from challenging their validity. We also find that Old Republic is not entitled to rescission. Accordingly, we reverse.

---

[1]The judgment was issued in a consolidated proceeding which involved a civil action by Old Republic against Bronson and Judith O'Connor and a motion made in the probate court by Judith O'Connor for judgment on a bond issued by Old Republic. Bronson is not a party to this appeal.

## II. Factual and Procedural Background

### A. *The Conservatorship*

On August 30, 1984, Kathleen Porter and Grace Coyne were appointed conservators for the estate of their brother, Gerald O'Connor. Bronson was the attorney of record for Porter and Coyne. Gerald O'Connor died on December 7, 1989. Porter died several days later, on December 26, 1989, and Judith O'Connor was appointed administrator of Porter's estate. Then, in August 1990, Coyne became incapacitated and Judith O'Connor was appointed as Coyne's conservator.[2] Judith O'Connor did not, in her capacity as conservator for Coyne, prepare a final account and report to close Gerald O'Connor's conservatorship estate.[3] In fact, that estate was not formally closed until almost three years after Gerald O'Connor died.

### B. *Bronson's Petition*

On April 9, 1992, Bronson filed an ex parte petition in the San Francisco probate court seeking appointment as successor conservator of Gerald O'Connor's estate (the Petition). Among other things, the Petition stated that Gerald O'Connor was deceased and that appointment of a successor conservator was necessary to prepare a final accounting and distribute the assets of the estate. The Petition also indicated that Bronson had filed a separate petition in San Mateo County to be appointed administrator of Gerald O'Connor's estate.[4]

There is no evidence Bronson gave notice of the Petition to anyone, that a court investigation was conducted, or that a hearing on the Petition was held.[5] On the same day the Petition was filed, the court issued an ex parte order appointing Bronson successor conservator of Gerald O'Connor's estate (the April 9 Order). The April 9 Order stated that Bronson was not required

---

[2]Coyne died on July 15, 1992.

[3]Section 2632, subdivision (b), of the Probate Code provides: "If a guardian or conservator dies or becomes incapacitated and a legal representative is appointed for the deceased or incapacitated guardian or conservator, the legal representative shall, not later than 60 days after appointment unless the court extends the time, file an account of the administration of the deceased or incapacitated guardian or conservator."

[4]Subsequently, Judith O'Connor objected to the Petition requesting that Bronson be appointed administrator; ultimately, the San Mateo County probate court appointed Judith O'Connor administrator of Gerald O'Connor's estate.

[5]Section 2683 of the Probate Code provides that notice of a hearing on a petition for appointment of a successor conservator be given at least 15 days before the hearing. (Prob. Code, § 2683, subd. (a).) The Probate Code also requires that, if the conservatee is not present at the hearing, a court investigator will have interviewed the conservatee and prepared a report for the court prior to the hearing on the petition. (Prob. Code, § 2684.)

to give notice of his appointment and fixed a bond at $400,000. Letters of successor conservatorship (the Letters) were also issued to Bronson on April 9, 1992.

## C. *The Old Republic Bond*

Old Republic issued a bond dated April 9, 1992, in the matter of the conservatorship of Gerald O'Connor (the Bond). The Bond named Bronson as principal and recited that he had been appointed "Successor Conservator." The Bond was signed by Old Republic's attorney-in-fact, identified Gerald O'Connor as the obligee, and obligated Old Republic to pay $400,000, which obligation was to continue until Bronson "faithfully execute[d] the duties of the trust according to law . . . ."[6] The parties dispute whether the Bond was filed in the probate court. Substantial evidence supports the trial court's factual determination that the Bond was never filed.[7]

The Bond is not in the court file for this case and there is no record in the registry of actions that it was ever filed. Carolyn Moran, the deputy clerk who issued the Letters to Bronson on April 9, 1992, testified that, if a bond was required, it was her "standard practice" to request that the bond be presented before she would issue letters. Indeed, Moran claimed that she would not issue letters unless a bond was presented to her. However, Moran could not recall whether, in the present case, Bronson actually presented the Bond to her before she issued the April 9 Letters. Julita De Chavez, Moran's supervisor, testified unequivocally that if the Bond had been filed it would be recorded in the registry of actions.

On April 30, 1992, the original Bond, which should have been filed with the probate court when the April 9 Letters were issued, was returned to Old Republic's agent, Dave Carter, in some manner not disclosed by the evidence. Carter testified at trial that he knew the Bond had not been filed with the court because it was not file-endorsed. Carter also testified that he was

[6] A certified copy of the power of attorney appointing Old Republic's attorney-in-fact was admitted into evidence at trial as defendant's exhibit 10. Apparently, exhibit 10 has been misplaced by the lower court. O'Connor has requested that this court take judicial notice of another certified copy of the power of attorney. O'Connor's request for judicial notice is granted. (See Evid. Code, § 452.)

[7] Judith O'Connor asserts that only legal issues are presented by this appeal, i.e., the "interpretation of a written instrument" and the "interpretation and applicability of a statute." She is incorrect. Although " '[i]nterpretation and applicability of a statute or ordinance is clearly a question of law' " (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671]) and "we independently review all questions of law" (*Hill* v. *City of Long Beach* (1995) 33 Cal.App.4th 1684, 1687 [40 Cal.Rptr.2d 125]), in this case the trial court also made numerous factual findings (such as the finding that the Bond was never filed) and findings of fact are reviewed only for substantial evidence. (*Ibid.*)

aware this original document was supposed to have been filed when the Letters were issued. Indeed, Carter stated that, in other cases, it was his practice to request file-endorsed copies of documents that needed to be filed with the court. This confirmed prior testimony by an Old Republic executive that Old Republic regularly received copies of filed bonds "the next day through the mail."

When the original Bond was returned to Carter, his assistant wrote "void" across the face of the Bond and, under the word "void," "see corrected bond." Carter then forwarded the original Bond to Old Republic which put it in a file. Old Republic subsequently issued a "duplicate original" Bond in the matter of the conservatorship of Gerald O'Connor, which identified Bronson as the Principal, stated he was appointed successor conservator, and had the same effective date of April 9, 1992, as the original Bond. According to the San Francisco Branch Manager for Old Republic, the duplicate original Bond was prepared because the original was "not correctly issued" in that it improperly identified Bronson as a "temporary successor conservator" instead of simply the "successor conservator."

Carter gave the executed original of the duplicate original Bond to Bronson and kept a copy for his files. The duplicate original Bond is not in the court file for this matter, and there is no evidence it was ever filed. Indeed, the copy of it in the surety's files was not file-stamped nor did it even show Bronson's signature as Principal.

D. *Bronson's Embezzlement and Judith O'Connor's Efforts to Enforce the Bond*

In early November 1992, the probate court settled Bronson's account as successor conservator of Gerald O'Connor's estate, approved his request for attorneys fees, terminated the conservatorship, and ordered Bronson to deliver the assets of the conservatorship to Judith O'Connor who had been appointed administrator of Gerald O'Connor's estate. The order calculated estate assets to be $413,441.38, authorized Bronson to credit himself $9,945.00 for legal fees, and provided that, upon delivery of the balance of the assets to Judith O'Connor, Bronson and the surety that posted his bond would be discharged.

On December 3, 1992, Judith O'Connor's attorney made a claim with Old Republic for payment of the Bond. According to this claim, Bronson had delivered to Judith O'Connor only $95,057.84 from Gerald O'Connor's estate. On May 20, 1993, Old Republic denied Judith O'Connor's claim for payment on the Bond and attempted to refund the Bond premium.

On June 8, 1993, Judith O'Connor filed a motion for judgment on the Bond in the probate court. The probate court denied Judith O'Connor's motion as untimely because a motion to surcharge Bronson needed to be heard first. On October 6, 1993, the probate court issued its order surcharging Bronson as conservator of Gerald O'Connor's estate on the grounds that he embezzled and converted estate property. Bronson was ordered to pay Judith O'Connor, as administrator of Gerald's estate, $300,412.85 as the amount that had been wrongfully converted, $24,076.32 in interest, and $15,000 in punitive damages.

### E. *Old Republic's Action and the Consolidated Proceeding*

On December 24, 1992, a few weeks after Judith O'Connor first made her claim against the Bond, Old Republic sued Bronson to recover losses it incurred by reason of issuing bonds to Bronson in this and other estate matters. On May 27,1993, after it denied Judith O'Connor's claim, Old Republic amended its complaint against Bronson and named Judith O'Connor as a defendant. In the amended complaint, Old Republic sought a declaration that the April 9, 1992, Order and Letters were null and void, and also sought to rescind the Bond on various grounds including fraud, mistake, and the alleged fact that the Bond never became effective.

On December 3, 1993, the superior court consolidated Old Republic's civil action with the probate proceeding. Issues pertaining to the dispute between Judith O'Connor and Old Republic were bifurcated and tried first to the court. On March 14, 1994, the trial court filed a tentative decision in favor of Old Republic declaring the April 9 Order and Letters void and also ordering the Bond rescinded. On May 12, 1994, the trial court adopted Old Republic's proposed statement of decision without change and entered judgment in favor of Old Republic.[8]

### III. DISCUSSION

The lower court exonerated Old Republic of liability for Bronson's actions on two alternative legal grounds: (1) The April 9 Order and Letters

---

[8]On May 10, 1994, after the trial court issued its tentative decision in favor of Old Republic, Judith O'Connor filed a renewed motion for judgment on the bond. After judgment was entered on Old Republic's claims, the trial court stayed Judith O'Connor's motion on the bond pending final determination of the judgment.

Judith O'Connor's notice of appeal purports to appeal not only from the judgment entered by the trial court on May 12, 1994, but also from the order staying her motion for judgment on the bond. She contends the stay order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (b). Section 904.1, subdivision (b), relates to the appealability of sanction orders. An order staying a motion for judgment on a bond is not an appealable order under the Probate Code. (See Prob. Code, § 2750.) The appeal from that order is, therefore, dismissed.

appointing Bronson successor conservator are void; and (2) Old Republic was entitled to rescind the Bond. We conclude, in contrast, that the April 9 Order and Letters are not void and that Old Republic is precluded from challenging their validity. Further, we find that Old Republic may not rescind the Bond.

A. *The Probate Court's April 9 Order and the Letters Issued in Reliance Thereon Are Not Void*

1. *The trial court failed to distinguish action in excess of a court's jurisdiction from action by a court which lacks subject matter jurisdiction*

 The trial court ruled that the April 9 Order and Letters are void because the probate court acted "in excess of its jurisdiction and/or without jurisdiction" when it appointed Bronson as the successor conservator for Gerald O'Connor. Specifically, the trial court found that (1) the April 9 Order appointing Bronson successor conservator is void because it was issued ex parte without notice, hearing or investigation in violation of Probate Code sections 1820 et seq. and 2680 et seq., (2) the Letters are void because they were issued ex parte without the filing of a bond, and (3) Bronson's appointment was invalid because the probate court did not have the authority under the code to appoint a successor conservator for a deceased person. Urging us to affirm the trial court's findings, Old Republic characterizes the probate court's appointment of Bronson as outside the "subject matter jurisdiction" of the superior court.

Both the trial court and Old Republic mischaracterize the jurisdictional problem at issue in this case; both fail to distinguish between conduct by a court that has no jurisdiction over the subject matter on the one hand and action which is in excess of the court's jurisdiction on the other hand. The distinction between these two concepts has been explained in some detail in a number of published decisions including our recent decision in *Law Offices of Stanley J. Bell* v. *Shine, Brown & Diamond* (1995) 36 Cal.App.4th 1011 [43 Cal.Rptr.2d 717] (*Bell*). (See also *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 727 [285 P.2d 636] (*Pacific Mutual*); 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, §§ 266, 270-272, pp. 663-665, 669-675.)

 The principle of "subject matter jurisdiction" relates to the inherent authority of the court involved to deal with the case or matter before it. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) In contrast, a court acts in excess of jurisdiction " 'where, though the court has jurisdiction over the subject matter and the

parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' " (*Bell, supra*, 36 Cal.App.4th at p. 1022, quoting *Abelleira* v. *District Court of Appeal, supra*, 17 Cal.2d at p. 288.)

The statement of decision is inaccurate to the extent it provides that action in excess of jurisdiction is null and void. Action "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" (i.e., jurisdiction over the subject matter and the parties) is not void, *but only voidable.* (See *Pacific Mutual, supra*, 44 Cal.2d at pp. 725-726; *Bell, supra*, 36 Cal.App.4th at pp. 1021-1026; *In re Griffin* (1967) 67 Cal.2d 343 [62 Cal.Rptr. 1, 431 P.2d 625]; 2 Witkin, Cal. Procedure, *supra*, Jurisdiction, §§ 266-271, 287, pp. 663-673, 693-694.) In contrast to cases involving other types of jurisdictional defects, a party may be precluded from challenging action in excess of a court's jurisdiction when the circumstances warrant applying principles of estoppel, disfavor of collateral attack or res judicata.[9] (*Bell, supra*, 36 Cal.App.4th at pp. 1021-1023.)

2. *The probate court was not without jurisdiction to issue the April 9 Order and Letters*

The statement of decision sets forth two grounds to support the trial court's conclusion that the probate court was "without jurisdiction" to issue the April 9 Order and Letters: (1) The probate court does not retain jurisdiction to appoint a successor conservator for a deceased person; and (2) failure to follow "mandatory" statutory procedures rendered the appointment void. We disagree on both counts.

a. *Gerald O'Connor's death did not terminate the probate court's jurisdiction*

"The superior court has jurisdiction of guardianship and conservatorship proceedings." (Prob. Code, § 2200.) Death of the conservatee does not terminate the probate court's jurisdiction over the conservatorship estate.

---

[9]Although not expressly cited for the proposition, one case cited in the statement of decision contains dicta that action in excess of jurisdiction by a court that has jurisdiction of the subject matter of the estate is "void." (*Estate of Strobeck* (1952) 111 Cal.App.2d 853, 860 [245 P.2d 317] (*Strobeck*).) Because the facts of *Strobeck* do not implicate any of the principles which could prevent a party from challenging court action in excess of jurisdiction, we view the *Strobeck* court's failure to distinguish between void and voidable actions as merely an oversight. To the extent *Strobeck* stands for the proposition that action in excess of jurisdiction is void, as opposed to voidable, we reject this proposition as inconsistent with the weight of authority, which we cite above.

The court retains jurisdiction over the estate "for the purpose of settling the accounts of the guardian or conservator *or for any other purpose incident to the enforcement of the judgments and orders of the court upon such accounts* . . . ." (Prob. Code, § 2630, italics added.) Relevant case law illustrates that the scope of the court's jurisdiction should be construed broadly to accomplish these goals. (Cf. *Conservatorship of Starr* (1989) 215 Cal.App.3d 1390 [264 Cal.Rptr. 80]; see also *Estate of Mims* (1962) 202 Cal.App.2d 332 [20 Cal.Rptr. 667].)

Further, although the trial court correctly observed that death of a conservatee terminates the conservatorship, the conservator has a continuing "duty of custody and conservation of the estate" after the conservatee's death "pending the delivery thereof to the personal representative of the . . . conservatee's estate or other disposition according to law." (Prob. Code, § 2467, subd. (a).) The Probate Code also expressly recognizes that, notwithstanding termination of the conservatorship, the conservator nevertheless retains those powers that are necessary to perform this duty. (Prob. Code, § 2467, subd. (b).)

Thus, in the present case, Gerald O'Connor's death did not terminate the probate court's jurisdiction over his estate. When the April 9 Order was issued, the conservatorship account for Gerald O'Connor's estate had not been settled and the court retained jurisdiction to settle it. Further, Coyne's duty of custody and conservation was continuing pending some disposition by the court. The Petition makes clear that the alleged purpose of Bronson's appointment as successor conservator was to settle the accounts of his clients, Coyne and Porter. Thus, although the probate court's method, i.e., appointing Bronson successor conservator, may not have been proper under the Probate Code (a question we do not answer), the court clearly had jurisdiction over Gerald O'Connor's conservatorship estate when it issued the April 9 Order and Letters.[10] The trial court's finding to the contrary was error.

Apparently, the trial court was influenced by the fact that the Probate Code does not expressly authorize the court to appoint a successor conservator for a deceased person. Thus, the Statement of Decision characterizes the probate court as a court of limited jurisdiction whose powers are "wholly statutory" and which "must look to express statutes for its jurisdiction and procedure." (Quoting 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills

---

[10]Although we do not reach the question whether the probate court erred by appointing Bronson successor conservator, we note that, under certain circumstances, the probate court may "compel" the attorney for the conservator to prepare the accounting. (Prob. Code, § 2632, subd. (c).)

and Probate, § 333, p. 366.) As Witkin explains, this view was expressed in "former case law." Section 7050 of the Probate Code, operative July 1, 1991, now clearly provides that the probate court is a court of general jurisdiction. (Prob. Code, § 7050, subd. (b); see also Prob. Code, § 800.)

The trial court also relied on authority which provides that "[a] conservatorship may be established only for adults and minors who are married or whose marriage has been dissolved." This authority is beside the point since, in the present case, there is no dispute that the conservatorship was "established" when Gerald O'Connor was alive, and there is no question on appeal as to the propriety of the initial establishment of that conservatorship. The question is whether Gerald O'Connor's death terminated the court's jurisdiction over the conservatorship estate. We hold that it did not.

b. *Failure to comply with statutory procedure did not deprive the probate court of jurisdiction*

The trial court concluded that mandatory statutory procedure was not followed by the probate court because the April 9 Order was issued without notice of the Petition, a hearing or an investigation, and because the Letters of Conservatorship were issued without the filing of a bond. Even if we accept these findings, the trial court erred by concluding that failure to comply with statutory procedures automatically rendered Bronson's appointment void. Apparently, this erroneous conclusion was precipitated by the trial court's misconception of the probate court as a court of limited jurisdiction and by its mistaken reliance on several cases involving markedly different provisions of the Probate Code.

None of the cases cited in the statement of decision, and relied on again by Old Republic on appeal, involve the statutory provisions at issue in the present case, nor do they allude to or establish a per se rule that failure to comply with statutory procedure automatically renders void the orders of a probate court. Indeed, *Estate of Buckley* (1982) 132 Cal.App.3d 434 [183 Cal.Rptr. 281] (*Buckley*), cited with approval in the statement of decision, recognizes that failure to comply with a statutory requirement renders a judgment "void" only when the statute "relates to jurisdiction in the 'fundamental' sense, that is to authority over the subject matter or the parties."[11] (*Id.* at p. 446.) None of the authority relied on by the trial court or cited to us by Old Republic supports the conclusion that the procedural irregularities in

---

[11]The *Buckley* court held that the statutory provisions at issue in that case did relate to the court's fundamental jurisdiction over the subject matter of the proceeding. The court reasoned that the Legislature expressly made compliance with the statutory requirement of publication of a notice of death and petition to administer a decedent's estate a prerequisite to the court's obtaining subject matter jurisdiction to probate a will. (*Buckley, supra,* 132 Cal.App.3d. at pp.

the present case deprived the probate court of subject matter jurisdiction over Gerald O'Connor's estate.

The trial court particularly relied on *Estate of Joslyn* (1967) 256 Cal.App.2d 671 [64 Cal.Rptr. 386] (*Joslyn*). The *Joslyn* court found ineffective a probate court order appointing a testamentary trustee when no petition had been filed and no notice of the proposed appointment had been posted by the court. The *Joslyn* court reasoned that individuals entitled to notice of the proposed appointment effectively waived their right to personal notice, but held that the stipulation did not and could not waive the statutory requirements that a petition be filed and that the court post notice of the prospective appointment. Reasoning that "jurisdiction may not be acquired by stipulation," the *Joslyn* court implicitly found that failure to comply with the statutory provisions at issue in that case deprived the probate court of subject matter jurisdiction. (*Id.* at p. 676.)

*Joslyn* is inapposite for several reasons. First, the violations of statutory requirements in that case are not remotely similar to the alleged procedural irregularities in the present case. Here, Bronson *did* file a petition and the probate court was not required to post notice of that petition. Second, *Joslyn* does not establish that failure to comply with statutory procedure automatically and inevitably deprives the probate court of subject matter jurisdiction. Indeed, the *Joslyn* court held that parties statutorily entitled to personal notice of the trustee's petition effectively waived their right to such notice. By holding that the personal notice requirement was waived, the *Joslyn* court acknowledged that personal notice is not jurisdictional since "jurisdiction may not be acquired by stipulation." (*Joslyn*, *supra*, 256 Cal.App.2d at p. 676.)

The only Supreme Court case cited to support the trial court's conclusion that the April 9 Order and Letters are void was *Abelleira* v. *District Court of Appeal*, *supra*, 17 Cal.2d 280.[12] But *Abelleira* holds that ". . . a probate court, with jurisdiction of an estate, and therefore over the appointment of an administrator, nevertheless acts in excess of jurisdiction if it fails to follow

---

448-450.) We need not explore the underpinnings of the *Buckley* holding since the present case involves very different provisions of the Probate Code.

[12]None of the other cases cited in the statement of decision address the statutory provisions at issue in this case or even involve conservatorship proceedings. (See *Estate of Poder* (1969) 274 Cal.App.2d 786 [79 Cal.Rptr. 484] [failure to comply with statutory prerequisites for obtaining jurisdiction to probate a will]; *Strobeck*, *supra*, 111 Cal.App.2d 853 [same]; *Grinbaum* v. *Superior Court* (1923) 192 Cal. 566 [221 P. 651] [failure to obtain personal jurisdiction over ward in guardianship proceeding]; *Sacks* v. *Superior Court* (1947) 79 Cal.App.2d 806 [180 P.2d 922] [failure to obtain personal jurisdiction over allegedly incompetent person rendered void an order appointing a guardian]; *In re Dahnke* (1923) 64 Cal.App. 555 [222 P. 381] [failure to provide notice of guardianship to ward's mother].)

the statutory provisions governing such appointment." (*Id.* at p. 288; see also *Pacific Mutual, supra,* 44 Cal.2d at pp. 725-727.) As discussed above, action in excess of a court's jurisdiction is not void, but merely voidable.

Because the trial court mischaracterized the jurisdictional issue presented by these facts, it never decided whether Old Republic could legitimately challenge the April 9 Order and Letters appointing Bronson successor conservator. We conclude that, for the reasons that follow, such a challenge is not permissible.

**B.** *Old Republic Is Precluded From Challenging the Validity of the April 9 Order and Letters*

"Unlike some other jurisdictional defects, a party may, by its conduct, be estopped from contesting an action in excess of jurisdiction." (*Bell, supra,* 36 Cal.App.4th at pp. 1022-1023.) When " 'the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when "[t]o hold otherwise would permit the parties to trifle with the courts." ' [Citations.]" (*Bell, supra,* 36 Cal.App.4th at pp. 1023-1024.)

We conclude that this record evidences a course of conduct by Old Republic whereby it manifested its consent to the procedure by which Bronson was appointed successor conservator of Gerald O'Connor's estate and that such conduct estops Old Republic from challenging the validity of Bronson's appointment. This course of conduct included (1) issuing the Bond without reviewing Bronson's Petition, (2) placing the original unfiled Bond in its file, keeping the premium, and issuing a duplicate original Bond to Bronson, all the while never securing (contrary to its usual policy) file-stamped copies of *either* edition of the Bond, and (3) declining to participate in the surcharge proceeding pursuant to which Bronson's liability was conclusively established.[13]

---

[13]The estoppel principles upon which we rely should be distinguished from section 623 of the Evidence Code, which estops a litigant from denying a "particular thing" which it has led another party to believe is true. (Evid. Code, § 623.) The trial court found that Judith O'Connor failed to establish her defense under that section. The court's findings are confusing because they do not articulate what statement or conduct by Old Republic it was referring to, or what "particular thing" Judith O'Connor was allegedly led to believe. In fact, we find

### 1. *Old Republic did not review Bronson's Petition which disclosed the alleged procedural irregularities*

Old Republic made the decision to issue the Bond knowing very little about the terms or circumstances of Bronson's appointment; it issued the Bond without reviewing the Petition or the April 9 Order. Had Old Republic looked at these documents, it would have learned, among other things, that (1) Bronson sought and obtained an ex parte appointment as successor conservator, (2) Gerald O'Connor was deceased and thus, for obvious reasons, was not interviewed by the court investigator, and (3) notice of the Petition was not provided to family members or interested persons. In *Mason* v. *U.S. Fid. & Guar. Co.* (1943) 60 Cal.App.2d 587 [141 P.2d 475] (*Mason*), a surety attempted to avoid liability under a bond which was used by the principal to obtain a temporary restraining order. The *Mason* court found that the surety was estopped from arguing that the temporary restraining order was issued in violation of applicable statutes. (*Id.* at p. 590.) The *Mason* court noted, among other things, that if the surety had reviewed the papers submitted to the court to secure the order before issuing its bond, the error about which it now complained might never have occurred. (*Id.* at p. 591.) This court approved and adopted the *Mason* court's reasoning in *First* v. *Armes* (1983) 146 Cal.App.3d 633, 638 [194 Cal.Rptr. 171]. The undertaking at issue in that case had (as was also the case in *Mason*) been issued by the surety before its principal's moving papers had even been prepared. We held that the surety was estopped to attempt to limit its liability on the undertaking by relying upon ambiguities in the order the surety's principal obtained by posting the undertaking. (*Id.* at pp. 637-638.)

In the present case, it is not clear from the record whether Bronson had already obtained the April 9 Order when Old Republic's agent issued the Bond to him. What is clear, though, is that if either Old Republic or its agent had read Bronson's Petition or the April 9 Order, they would have discovered *all* of the alleged procedural irregularities about which Old Republic now complains.

### 2. *Old Republic put the original Bond in its file, never secured a file-stamped copy, and all the while retained the premium*

Old Republic accepted, from some unknown source, the original Bond that it knew should have been filed with the clerk of the probate court. Old

---

no evidence in the record that Judith O'Connor ever asserted section 623 of the Evidence Code as an affirmative defense in the first place. In any event, the issue we address and find dispositive in this case is not whether Old Republic misled Judith O'Connor, but whether Old Republic can challenge the validity of the April 9 Order and Letters. For the reasons we discuss, we conclude that such a challenge is not permissible.

Republic's agent testified that he knew this original bond was not file-endorsed and that it should have been filed with the court when the Letters were issued to Bronson. Nevertheless, Old Republic kept the original unfiled Bond and made no effort to declare the Bond ineffective or return the premium.[14] Instead, Old Republic issued a duplicate original Bond to Bronson. There is no evidence Old Republic made any effort to determine whether the duplicate original Bond was ever filed with the court notwithstanding its practice of requiring court-endorsed copies of such documents and its knowledge that the original Bond had never been filed. Indeed, Old Republic's copy of the duplicate original Bond does not even contain Bronson's signature. Old Republic was content to keep the Bond premium and to remain silent about information which it now claims should relieve it from liability under the Bond.

We find it particularly appropriate to apply the estoppel principle articulated in *Mason*, *supra*, 60 Cal.App.2d 587, to preclude Old Republic from arguing Bronson's appointment was not effective because the Bond was never filed.[15] Indeed, Old Republic's conduct in this matter is more egregious since it not only failed to review pertinent court documents, it ignored the consequences of the fact that the original Bond was returned to it *unfiled*, and then went on to issue yet another duplicate original to Bronson and, again, failed to secure a file-endorsed copy of that Bond as was its general practice. Important policy concerns are served by discouraging the very conduct Old Republic engaged in here, i.e., placing the original Bond it its files, keeping the Bond premium, and remaining silent until after a claim was made against the Bond.

---

[14]Old Republic should have been concerned not only because the Bond was not filed but because the original instrument was returned to it. "A bond given in an action or proceeding may be withdrawn from the file and returned to the principal on order of the court only if one of the following conditions is satisfied: [¶] (a) The beneficiary so stipulates. [¶] (b) The bond is no longer in force and effect and the time during which the liability on the bond may be enforced has expired." (Code Civ. Proc., § 995.360.)

[15]Ironically, Old Republic contends that the fact the Bond was not filed distinguishes cases like *Mason* which estop sureties from denying the liability of their principals. Old Republic argues that, since the Bond was never filed, it was not used by Bronson to obtain the April 9 Order and, therefore, did not enable Bronson to embezzle funds from the conservatorship estate. Actually, the record is silent as to how, when, or if Bronson used the Bond to further his criminal purpose. It seems quite plausible, though, that Bronson may have obtained the Letters from Deputy Clerk Moran by showing her the Bond even though the Bond was never filed.

In any event, the fact that the Bond was never filed has little bearing on our estoppel analysis which properly focuses on *Old Republic's conduct* in this matter. Old Republic issued the Bond with limited background information and kept the Bond premium after learning the original Bond had not been filed. It was also content to keep its knowledge about the unfiled Bond to itself until it needed a justification for denying Judith O'Connor's claim for payment under it.

### 3. *Old Republic did not participate in the surcharge action*

The probate court's final order surcharging Bronson for violating his duties as successor conservator was entered on October 6, 1993. In the present action, Old Republic has ignored that surcharge order and carefully limited its objections to the April 9 Order and Letters. However, its substantive challenge is much more far-reaching. Indeed, Old Republic's action amounts to a collateral attack on the probate court's surcharge order which conclusively established that Bronson "while acting as Successor Conservator duly appointed by order of this court . . . in bad faith wrongfully concealed and disposed of property belonging to the estate of Gerald O'Connor . . . ." For at least two reasons, Old Republic should be precluded from launching such a collateral attack.

First, an order establishing the principal's liability is binding on the surety. The surety cannot go behind the decree and inquire into its validity. (*Irwin* v. *Backus* (1864) 25 Cal. 214, 223-224; *Crumrine* v. *Dizdar* (1943) 59 Cal.App.2d 783, 787-790 [140 P.2d 101]; see also *Maloney* v. *Mass. Bonding & Ins. Co.* (1942) 20 Cal.2d 1, 6 [123 P.2d 449]; *Estate of Davis* (1990) 219 Cal.App.3d 663, 669 [268 Cal.Rptr. 384].) "If a surety has signed an administrator's bond, and has undertaken thereby to pay any balance which shall be adjudged to be due by the administrator to the estate, he is bound by the judgment unless he can show the judgment was obtained by fraud." (*Crumrine* v. *Dizdar, supra,* 59 Cal.App.2d at p. 789.) "[T]he defenses available to a surety in an action upon the bond are: that the bond was not made; or that the decree ordering the administrator to deliver property for which he was accountable, was obeyed; or that the decree was not made; or that the decree, if made, was obtained by fraud." (*Id.* at p. 787.) Old Republic cannot circumvent this long-standing rule by ignoring the surcharge order establishing Bronson's liability and attacking instead the earlier order pursuant to which Bronson was appointed successor conservator.

Second, "[t]he 'estoppel' principle is particularly compelling where, as here, what is involved is a collateral attack." (*Bell, supra,* 36 Cal.App.4th at p. 1024.) " '[A]cts merely in excess of jurisdiction, by a court having jurisdiction of the subject matter and parties, should not be subject to collateral attack unless exceptional circumstances precluded an earlier and more appropriate attack.' " (*Ibid.,* quoting 2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 266, p. 664; see also *Pacific Mutual, supra,* 44 Cal.2d at p. 727.)

Old Republic had notice of the surcharge proceeding and could have participated. (*Estate of Davis, supra,* 219 Cal.App.3d 663 [a surety is an

interested person under Probate Code section 48, and is thus entitled to participate in a proceeding to surcharge its principal].) Though Old Republic questioned both the validity of Bronson's appointment and the effectiveness of the Bond, it chose not to participate in the surcharge proceeding.[16] We find no "exceptional circumstances" to justify Old Republic's backdoor, collateral attack on the surcharge order.

In sum, we conclude that Old Republic is precluded by principles of estoppel and disfavor of collateral attacks from challenging the validity of the April 9 Order and Letters.

### C. Old Republic Is Not Entitled to Rescission

The trial court found that Old Republic was entitled to rescind the Bond because (1) the Bond was written pursuant to a mistake of fact and (2) Gerald O'Connor did not have an insurable interest in the property insured. On appeal Old Republic contends the rescission was also proper because there was a failure of consideration. We reject each of these alleged justifications for rescission.

#### 1. Mistake of fact

 Mistake of fact is the primary justification identified by the trial court as warranting rescission of the Bond. " 'Rescission may be had for mistake of fact if the mistake is material to the contract and is not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, if the other party can be placed in status quo, if the party seeking relief gives prompt notice of his election to rescind, and if he restores or offers to restore to the other party everything of value which he has received under the contract.' [Citations.]" (*White* v. *Berrenda Mesa Water Dist.* (1970) 7 Cal.App.3d 894, 900-901 [87 Cal.Rptr. 338]; see also *Brunzell Const. Co.* v. *G.J. Weisbrod, Inc.* (1955) 134 Cal.App.2d 278, 284 [285 P.2d 989].)

Ignoring this basic rule, the statement of decision contains the following irrelevant proposition: "Equity will permit a rescission of a contract for mistake of both parties as to a material collateral matter, vital to and forming

---

[16]At oral argument before this court, Old Republic's counsel argued that *Estate of Davis*, *supra*, 219 Cal.App.3d 663 and section 996.440 of the Code of Civil Procedure give a surety the option to "elect" not to participate in a surcharge proceeding and to thereby avoid being bound by the outcome of the surcharge action. This is simply not correct. Section 996.440 of the Code of Civil Procedure does not even address the preclusive effect of a surcharge order but, rather, gives the beneficiary the option to enforce liability on a bond by motion without the necessity of an independent action. And *Estate of Davis* holds that a surety may participate in a surcharge proceeding as an interested party *because*, among other things, *it is bound by the court's order*. (*Estate of Davis*, *supra*, 219 Cal.App.3d at p. 669.)

an essential part of the contract." (Citing *Tetenman* v. *Epstein* (1924) 66 Cal.App. 745 [226 P. 966].) The proposition is irrelevant because the trial court did not find that there was a mutual mistake in the present case. Indeed, the record could support no such finding. All of the trial court's findings in this regard pertain exclusively to Old Republic's unilateral mistaken beliefs—that Bronson's appointment was valid and effective, that proper procedure was followed, and that Gerald O'Connor was alive. Thus, we cannot approve the rescission on the ground of mutual mistake.

Section 1689 of the Civil Code, which sets forth the grounds for rescission, does not require that a mistake of fact be mutual in order to justify rescission. However, case law limits the circumstances under which a unilateral mistake renders a contract voidable. We conclude that those limitations, ignored by the trial court, apply in the present case and prohibit Old Republic from rescinding the Bond on the ground of unilateral mistake.

Many courts have held that a unilateral mistake is ground for rescission only if the mistake is known to the other contracting party and is encouraged or fostered by that party. (See *Bunnett* v. *Regents of University of California* (1995) 35 Cal.App.4th 843, 854-855 [41 Cal.Rptr.2d 567]; *Merced County Mut. Fire Ins. Co.* v. *State of California* (1991) 233 Cal.App.3d 765, 772 [284 Cal.Rptr. 680]; *Architects & Contractors Estimating Service, Inc.* v. *Smith* (1985) 164 Cal.App.3d 1001, 1007-1008 [211 Cal.Rptr. 45]; *Meyer* v. *Benko* (1976) 55 Cal.App.3d 937, 944 [127 Cal.Rptr. 846].) A much relaxed version of this rule provides that, if the proponent of the contract had reason to know of the mistake, the mistaken party can avoid the contract. (See *In re First Capital Life Ins. Co.* (1995) 34 Cal.App.4th 1283, 1288 [40 Cal.Rptr.2d 816].)

In the present case, the trial court made no finding, nor is there any evidence, that the other contracting party (Bronson) was aware of Old Republic's factual mistakes or unfairly used those mistakes to his own advantage. Indeed, and as noted above, had Old Republic followed a more prudent course and read Bronson's Petition before issuing the Bond, all of the mistakes it made could have been avoided. Nor is there any finding or evidence that Judith O'Connor, the proponent of the contract in this case, knew or had reason to know of Old Republic's mistakes. In fact, it was Old Republic which learned that proper procedure was not followed when it received back the original, unfiled Bond.

Division Five of this court has held that, notwithstanding the rules stated above, a trial court has the power to rescind a contract for purely unilateral mistake not induced or contributed to by the other party. (*Schultz* v. *County of Contra Costa* (1984) 157 Cal.App.3d 242 [203 Cal.Rptr. 760] (*Schultz*),

disagreed with on another ground in *Van Petten* v. *County of San Diego* (1995) 38 Cal.App.4th 43, 50 [44 Cal.Rptr.2d 816].) The *Schultz* court based this conclusion on section 153 of the Restatement Second of Contracts, which provides: " 'Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and [¶] (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or [¶] (b) the other party had reason to know of the mistake or his fault caused the mistake.' " (*Schultz*, *supra*, 157 Cal.App.3d. at p. 249, fn. omitted, quoting Rest.2d Contracts, § 153, p. 394.) The *Schultz* court found that California law recognizes both alternative grounds for rescission which are set forth in section 153 of the Restatement.

*Schultz* does not alter our conclusion that rescission is inappropriate in the present case for two reasons. First, enforcing the Bond would not be unconscionable under these facts. Second, as the *Schultz* court also recognized, a contract is not voidable under section 153 of the Restatement *if the party seeking rescission bore the risk of mistake pursuant to section 154 of the Restatement.* (*Schultz*, *supra*, 157 Cal.App.3d at p. 249, fn. 1.) "A party [to a contract] bears the risk of a mistake when [¶] . . . he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." (Rest.2d Contracts, § 154, subd. (b), pp. 402-403; *In re Marriage of Hahn* (1990) 224 Cal.App.3d 1236, 1241 [273 Cal.Rptr. 516].) In the present case, Old Republic cannot reasonably dispute the fact that it made the decision to issue the Bond without first obtaining and reviewing available information about Bronson's appointment. It treated its limited information as sufficient and thus bore the risk that it was mistaken.

Our conclusion that rescissionary relief should be denied is further supported by the rule that "[a] contract is voidable for mistake only if enforcement would be materially harmful or more onerous to the party seeking avoidance than it would have been had the law or the facts been as believed." (See *Guthrie* v. *Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 886 [124 Cal.Rptr. 577]; Rest., Contracts, § 502, pp. 961-962.) In the present case, the trial court found that Old Republic would not have written the Bond had it not been mistaken about certain facts. However, the court did not find that any of those mistakes made the risk Old Republic knowingly assumed any more onerous or substantial; indeed, the mistakes did not relate to the conditions or degree of Old Republic's liability under the Bond. If the facts had been as Old Republic believed they were, Bronson would still have been able to abscond with estate funds and Old Republic's liability would have been the same.

A final factor weighing against rescission, a factor ignored by the trial court, is that permitting rescission would adversely and unfairly injure the beneficiaries of Gerald O'Connor's estate. "It is, of course, fundamental that where the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies." (*Beckwith* v. *Sheldon* (1913) 165 Cal. 319, 324 [131 P. 1049].) Old Republic was on notice that proper procedure was not followed when it first received the original unfiled Bond in the mail. Nevertheless, Old Republic did not attempt to rescind the Bond until Gerald O'Connor's estate and those interested in that estate had been severely injured by Bronson.

In sum, Old Republic's mistakes are attributable to nobody other than itself; it assumed the risk of acting with limited information, and it did not act promptly to rescind (or even to make inquiry) when it received back the original unfiled Bond and, at the same time, *did not* receive back a file-stamped copy. Further, if rescission is permitted, the parties cannot be returned to the status quo and, more importantly, the interests of third parties would be substantially injured. For all of these reasons, Old Republic is not entitled to rescind the Bond on the ground of unilateral mistake.

### 2. *Lack of an insurable interest*

■ The trial court found that Old Republic was entitled to rescission pursuant to "various provisions of the Insurance Code." Specifically, the trial court relied on section 280 of the Insurance Code which provides: "If the insured has no insurable interest, the contract is void." The court reasoned that Gerald O'Connor was the beneficiary of the bond and that, since he was deceased, he did not have an insurable interest when the Bond was issued.

We have found no authority which identifies section 280 of the Insurance Code as a basis for affirming rescission of a surety bond. The only authority identified by the trial court is Insurance Code section 100, which, according to the trial court, "expressly makes its provisions applicable to Sureties." Section 100 of the Insurance Code does identify "Surety" as one of several "classes" of Insurance. However, as Old Republic concedes, a surety contract is not an insurance policy, but a third party beneficiary undertaking to indemnify a person against losses resulting from the acts of the principal. (See *Schmitt* v. *Insurance Co. of North America* (1991) 230 Cal.App.3d 245 [281 Cal.Rptr. 261]; *Lumbermens Mutual Casualty Co.* v. *Agency Rent-A-Car, Inc.* (1982) 128 Cal.App.3d 764, 769 [180 Cal.Rptr. 546].) Apparently, Old Republic convinced the trial court that the beneficiary of a surety bond is sufficiently analogous to an "insured" to justify applying section 280 of the Insurance Code in this context.

Even if we accept Old Republic's analogy, section 280 of the Insurance Code does not authorize Old Republic's attempted rescission of the Bond. The trial court's finding to the contrary is error because it is based on the faulty premise that Gerald O'Connor was the only possible beneficiary under the Bond. Section 2320 of the Probate Code, which sets forth the general requirement of a bond in conservatorship and guardianship proceedings, specifically provides that "[t]he bond shall be for the benefit of the ward or conservatee *and all persons interested in the guardianship or conservatorship estate . . . .*" (Prob. Code, § 2320, subd. (b), italics added.)[17] Thus, Gerald O'Connor was not the only beneficiary of the Bond. For example, Grace Coyne, Gerald O'Connor's incapacitated conservator and a named beneficiary in his will, was an interested person in the conservatorship estate.

Coyne, who was alive when the Bond was issued, had an insurable interest in Gerald O'Connor's conservatorship estate. "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest." (Ins. Code, § 281.)[18] The "contemplated peril" in this case was Bronson, and Bronson's conduct directly "damnified" the interests of Coyne and her successors in the estate of Gerald O'Connor.

### 3. *Failure of consideration*

██ Although the trial court did not find there was a failure of consideration, Old Republic argues that a material consideration for the Bond failed because "all of the conditions essential to the effective giving of a bond failed." The allegedly failed conditions were that (1) Bronson's appointment never became effective, (2) the intended beneficiary on the Bond was deceased, and (3) the Bond never became effective.

### a. *Bronson's appointment*

We have already explained that Old Republic is estopped from challenging the effectiveness of Bronson's appointment. Our conclusion is not affected by *Taylor* v. *Exnicious* (1925) 197 Cal. 443 [241 P. 397] (*Taylor*), which Old Republic mischaracterizes as "exactly on the point." In *Taylor*, a bankruptcy trustee brought an action against a receiver of the bankrupt company and the surety who posted the receiver's bond to recover estate money the receiver failed to turn over to the trustee. The complaint alleged,

---

[17]When, as here, a bond is given pursuant to a statute, that statute is incorporated into the bond. (*Schmitt* v. *Insurance Co. of North America, supra,* 230 Cal.App.3d at p. 258.)

[18]"An insurable interest in property may consist in: [¶] 1. An existing interest; [¶] 2. An inchoate interest founded on an existing interest; or, [¶] 3. An expectancy, coupled with an existing interest in that out of which the expectancy arises." (Ins. Code, § 282.)

among other things, that the order appointing the receiver was in excess of the court's jurisdiction. (*Id.* at pp. 444-445.) The *Taylor* court affirmed an order granting the surety's demurrer, stating: "We take it . . . to be the well-settled law of this state that a surety upon a bond given pursuant to an order of court or pursuant to a statute becomes such in contemplation of a valid order or valid statute, and not otherwise. If the order appointing the receiver be void, a material consideration for the execution of the bond has failed, and the surety cannot be held upon it." (*Id.* at p. 446.) We decline to extend the rule stated in *Taylor* to the present facts. Since *Taylor* was decided, our Supreme Court has clarified that action in excess of jurisdiction is not void, but only voidable. (See, e.g., *Pacific Mutual, supra,* 44 Cal.2d at pp. 725-726; *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at pp. 287-291.) In the present case, principles of estoppel and the disfavor of collateral attack, principles apparently not implicated in *Taylor,* preclude Old Republic from challenging the validity of the April 9 Order. Since that order is not "void," the *Taylor* rule does not apply.[19]

In *Bookasta* v. *Hartford Acc. & Indem. Co.* (1975) 46 Cal.App.3d 237 [120 Cal.Rptr. 229] (*Bookasta*), Bookasta sued on an undertaking that had been issued by the defendant surety in a prior action. The undertaking was issued in the prior action to secure a prejudgment attachment of Bookasta's assets. Bookasta prevailed in that action and alleged substantial damages as a result of the attachment. (*Id.* at p. 239.) After Bookasta filed the second action, the statute pursuant to which the prejudgment attachment had been ordered in the prior action was declared unconstitutional. (*Ibid.*) The *Bookasta* court rejected the contention that there was a failure of consideration for the bond because the statute pursuant to which it was issued was subsequently found to be void. (*Id.* at pp. 240-241.)

The *Bookasta* court recognized that a statute is not considered void but "merely voidable until such time as it is determined to be unconstitutional and that 'The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.' [Citations.]" (*Bookasta, supra,* 46 Cal.App.3d at p. 242.) The court then applied a form of estoppel to preclude the surety from denying the validity of the undertaking which had been used to secure the attachment. (*Id.* at pp. 241-242.) Although for different reasons, we have also found that the facts of the present case warrant applying estoppel to preclude Old Republic from challenging the April 9 Order in the present case.

---

[19]For the same reason, Old Republic's reliance on *Stowe* v. *Matson* (1949) 94 Cal.App.2d 678 [211 P.2d 591] is misplaced. In that case the court of appeal expressly held that the attachment was void *ab initio* and not merely voidable because the trial court was without jurisdiction to issue it. (*Id.* at p. 680.)

### b. *The beneficiary*

Old Republic's contention that there was never a third party beneficiary on the Bond is a reformulation of its argument there was no insurable interest in this case. Essentially, Old Republic contends that there was no beneficiary of the Bond because Gerald O'Connor was dead when the Bond was issued. As Old Republic concedes, the beneficiary is "the person for whose benefit the bond was given, whether executed to, in favor of, in the name of, or payable to the person as obligee." The persons for whose benefit the conservatorship bond is issued are identified in Probate Code section 2320, subdivision (b), and include not only the conservatee, but "all persons interested" in the conservatorship estate. In other words, the bond is issued to protect the conservatorship *estate* and is not, as Old Republic contends, for the sole protection of the conservatee.

### c. *The Bond*

Old Republic argues that the Bond never became effective because it was never filed or approved by the court.

Section 995.420, subdivision (a), of the Code of Civil Procedure states: "Unless the statute providing for a bond provides that the bond becomes effective at a different time, a bond is effective at the time it is given or, *if the statute requires that the bond be approved, at the time it is approved.*" (Italics added.) Section 2320, subdivision (a), of the Probate Code provides that "[e]xcept as otherwise provided by statute, every person appointed as guardian or conservator shall, before letters are issued, give a bond *approved by the court.*" (Italics added.)

Old Republic argues that these statutory provisions establish that, since the Bond was never filed, it was not approved by the court and never became effective. Even if we accept this literal interpretation of the statutory provisions,[20] we cannot accept Old Republic's contention that Bronson's filing and obtaining approval of the Bond was material consideration for Old Republic's issuance of the Bond to Bronson. Consideration is a benefit conferred or agreed to be conferred upon the promisor or prejudice suffered or agreed to be suffered "as an inducement" to the promisor. (Civ. Code, § 1605.) In this case, the requirements that the Bond be filed and approved by the court were not negotiated by Bronson and Old Republic; they were not benefits conferred by Bronson on Old Republic or inducements for Old Republic to issue the Bond. These requirements were imposed by a statute

---

[20]Another interpretation of the relevant statutory provisions is that admitted surety companies, such as Old Republic, are "pre-approved" by the court. (Cf. Code Civ. Proc., § 995.630.)

which strongly suggests, by its own terms, that it was not enacted to benefit sureties. Section 995.380 of the Code of Civil Procedure provides that defects in the giving or filing of a bond *do not release the surety from liability* and that a beneficiary may *enforce* the liability on the bond against "the persons who intended to become and were included as sureties on the bond." (Code Civ. Proc., § 995.380, italics added.)[21]

In sum, we conclude that Old Republic did not establish a failure of consideration entitling it to rescind the Bond. This record indicates rather clearly that the only real consideration for issuing the Bond in this case was the payment of the premium. In this regard, we find this case analogous to *Mason*, in which the surety was estopped from denying liability under a surety bond used to secure a temporary restraining order. (*Mason*, *supra*, 60 Cal.App.2d 587.) The *Mason* court rejected as unsound the surety's argument that there was a failure of consideration because the order pursuant to which its bond was posted did not comply with applicable statutory requirements. According to it, "[t]he issuance of a proper restraining order was not the consideration for the issuance of the bond. The bonding company did not bargain to issue a bond in consideration of [its principal] securing a proper restraining order under [Code of Civil Procedure] section 527. It issued the bond for a premium, which was apparently paid. Whatever rights it may have against [the principal] because he secured an improper order are not involved in this case." (*Id.* at p. 593.)

This principle is equally applicable here.

### D. *Judith O'Connor Is Not Estopped by Her Negligence From Making a Claim Under the Bond*

The trial court found that Judith O'Connor's negligence estopped her from seeking relief against Old Republic. This conclusion was based on section 3543 of the Civil Code which provides that "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." The conclusion that Judith O'Connor is more to blame for Bronson's conduct than Old Republic is simply not supported by substantial evidence.

---

[21]Section 995.380 provides:

"(a) If a bond does not contain the substantial matter or conditions required by this chapter or by the statute providing for the bond, or if there are any defects in the giving or filing of the bond, the bond is not void so as to release the principal and sureties from liability.

"(b) The beneficiary may, in proceedings to enforce the liability on the bond, suggest the defect in the bond, or its giving or filing, and enforce the liability against the principal and the persons who intended to become and were included as sureties on the bond." (Code Civ. Proc., § 995.380.)

The trial court reasoned that Judith O'Connor was the negligent party because she failed to file an accounting in the conservatorship proceeding in her capacity as administrator of the estate of Gerald O'Connor's deceased conservator. If Judith O'Connor had filed an accounting and initiated a closure of Gerald O'Connor's conservatorship estate, possibly Bronson would not have embezzled from the estate. But we disagree that Judith O'Connor's conduct in her capacity as someone else's personal representative justifies penalizing this conservatorship estate.

In ruling that the conservatorship estate should suffer the consequences of Bronson's actions, the trial court did not acknowledge the role that others played in creating the predicament presented to it and now us. For example, the probate court did not follow proper procedure and issued the Letters without filing the Bond. More importantly for present purposes, Old Republic's conduct is even more culpable. We refer specifically to the several matters already noted: its issuance of the Bond with limited (if any) background information, its conduct of standing by silently with the original unfiled Bond and premium in hand (but no file-stamped copies of *either* edition of the Bond) until a claim was made, and its decision not to participate in the surcharge proceeding notwithstanding its intention to use alleged defects in Bronson's appointment to deny its own liability under the Bond.

In short, Judith O'Connor's conduct was markedly less culpable than Old Republic's in this matter. In any event, it does not justify releasing Old Republic from liability on the Bond it issued—for consideration—to guarantee the faithful performance of Bronson's obligations to the conservatorship estate of Gerald O'Connor.

## IV. DISPOSITION

The judgment is reversed, and the trial court directed to enter a new judgment consistent with the foregoing. Costs on appeal are awarded to appellant.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied September 11, 1996, and respondent's petition for review by the Supreme Court was denied November 20, 1996.